**UNITED STATES of America**

**v.**

**Ronrico DAVIS and Ricky Corey Turner**

**No. 8:00CR379T17MSS.**

United States District Court, M.D. Florida, Tampa Division.

Aug. 6, 2001.

**1236**

John F. Rudy, III, U.S. Attorney's Office, Tampa, FL, for U.S.

Donald E. Horrox, Fed. Public Defender's Office, Tampa, FL, for Ronrico Darnell Davis.

Daniel F. Daly, Law Office of Daniel F. Daly, Tampa, FL, for Ricky Corey Turner.

### ORDER GRANTING MOTION TO SUPPRESS

KOVACHEVICH, District Judge.

This cause comes before the Court on Defendants' Motion to Suppress Evidence (Dkt.40); transcripts of the hearing for the Motion to Suppress (Dkt.56, 57); Report and Recommendation (hereafter R & R) issued by Magistrate Judge Mary S. Scriven on May 18, 2001 (Dkt.63); and the Governments' Objections to the Report and Recommendation (Dkt.67).

The Defendants' filed the motion to suppress seeking to suppress the following: 1) a digital Tanita scale with residue, 2) audio tape of suspects, 3) Polaroid photos of scene, 4) .45 cal. rounds, 5) 983.4 grams crack cocaine, 6) cloth "Havana Joe" bag, 7) miscellaneous plastic baggies with cocaine residue, 8) hand scales, 9) 6.4 grams of marijuana in baggie, 10) Sentry V330 safe with key, 11) 43.45 cal. rounds in box, 12) Ziploc baggies in 2 boxes, 13) utility bill, 14) Ronrico Davis' Florida identification card, 15) pot with residue, 16) cooking pan, 17) "Havana Joe" canvas bag with shoes, 18) .45 cal. Colt Combat Commander Serial # 705SC5206, 19) extended .45 cal. magazine, and 20) $332.00 in U.S. currency. This Court referred the motion to suppress to the assigned magistrate judge for proceedings, including an evidentiary hearing and issuance of an R & R (Dkt.63).

Magistrate Judge Scriven held an evidentiary hearing on April 9 and 10, 2001, and issued an R & R on May 18, 2001. The R & R concludes that regardless of defendant, Ricky Turner's, "lack of respect for and his intent to defraud the judicial system" on previous occasions:

> [T]his Court is guided by the principles set forth in *United States v. Mesa*, 62 F.3d 159 (6th Cir.1995). That Court affirmed the suppression of five kilograms of cocaine and two firearms and stated: Although there is always a temptation in cases of this nature, when a substantial quantity of drugs and firearms are found to let the end justify the means, it must be remembered that the court only sees the cases in which the conduct of the officer resulted in contraband being found. If the officers had found no drugs in the Defendant's car, obviously we would not even know that this traffic stop had ever occurred. Therefore, we must always accept that the courts will always be 'thwarting' what some may view as a good piece of police work when a motion to suppress is granted in cases of this nature. *Id.* at 163.

For the reasons outlined above, the Undersigned REPORTS and RECOMMENDS that Defendant's Motion to Suppress (Dkt.40) be Granted. (Dkt.63).

### Standard of Review

 Under the Federal Magistrate's Act, Congress vested the magistrate

judges with the power to conduct evidentiary hearings and to submit proposed findings of fact and recommendations for the disposition of certain pretrial matters. *See* 28 U.S.C. § 636. Within ten days after being served with the R & R, any party may file written objections to the proposed findings of fact and recommendations. *See* 28 U.S.C. § 636(b)(1). When a timely objection is made, the determination is subject to a *de novo* review by the district court. However, portions of the R & R that are not objected to will be evaluated by the district court under a clearly erroneous standard. *See Gropp v. United Airlines, Inc.*, 817 F.Supp. 1558 (M.D.Fla. 1993).

## Findings of Fact

The R & R sets forth a thorough recitation of the facts established by the transcript of the evidentiary hearings and exhibits. The Court finds six objections stated by the government to the proposed findings of fact set forth by Magistrate Judge Scriven. First, the government objects to the finding that law enforcement corroborated very little information reported by the tipster. The government puts forth that Hillsborough County Sheriff's Office (HCSO) obtained a booking photo and criminal history of Turner and compared the booking photo with the defendant. This is the "very little information" that was corroborated. However, the government also stated "HCSO confirmed with the Florida Department of Motor Vehicles that a creamy gold Infinity was registered to Ricky Cory Turner and had a specialty Tag (University of West Florida) of W9901." (Dkt.67, pg.2). However, upon reviewing the transcript, there was no testimony that stated that the Florida Department of Motor Vehicles confirmed this information. Detective Baxter testified, "I think that if you run the tag on that, it comes back to Mr. Turner. It's either that or listed specifically in the complaint was the tag number we were able to match the two that way." (Dkt.57, pg.176). Judge Scriven then clarified, "So you don't know whether you confirmed this or you just relied on what was in the complaint?" Detective Baxter stated that Magistrate Judge Scriven was correct. Detective Ura only testified that the anonymous caller gave the information, and that it was "later revealed" to be a certain type of tag. The term "later revealed" was never clarified during the hearing in front of Magistrate Judge Scriven.

The government also stated that Detective Baxter could not recall whether he confirmed Turner's phone number with GTE. This Court finds, in accordance with Magistrate Judge Scriven, that very little of the tipster's information was corroborated by law enforcement efforts beyond accepting the information in the tipster's call.

The second objection states that Detective Ura did not testify that "substantial government force" was to be used to address all African–American males who entered the parking lot of the apartment complex. The government further states that Detective Ura testified that all African–American males were to be addressed. According to Detective Ura, the term "addressed" means "to try to confront them before they make it to the door." (Dkt.57, pg.134). This statement denotes a certain amount of aggression by law enforcement. Combining this with the fact that there were at least four to five detectives on the scene in numerous vehicles, this Court agrees with Magistrate Judge Scriven's report that substantial government force was to be used.

The government's third objection goes to the credibility of the two witnesses, Denise Glomb and Sara Ferrera. The

Magistrate Judge was present for all the testimony given in this evidentiary hearing. She found the testimony of these two non-interested parties credible and consistent. They testified to much of the same information that detectives gave. The fact that they could not identify the defendants does not negate their testimony, nor does it mean that they are lying under oath. They testified to what they heard and saw on the morning of September 22, 2000, at the Windwood apartment complex on Florida Avenue.

The fourth objection states that law enforcement did not testify about any pedestrians they removed from the area. Only two of the four to five detectives on the scene testified. The fact that law enforcement did not testify about pedestrians removed from the scene does not mean that there were no pedestrians present at some point during the altercation.

The fifth objection goes to whether there were exigent circumstances, which will be addressed in later discussion in this order.

The final objection is the question of whether Turner knew that he did not have to consent to the search of his apartment. This Court agrees with the Magistrate Judge that Ricky Turner was not informed of any charges when he was handcuffed. This Court further agrees that Turner was actually told by Detective Ura that he was not charged with anything prior to signing the consent form. He was placed in the back of a police car behind the plexiglas partition so that no air conditioning could get to him. It was a hot September day, and Turner was sweating so profusely that Detective Ura had to wipe the sweat from his eyes at least twice.

This Court has reviewed the remainder of the findings of fact proposed by the R & R and finds them supported by the record evidence.

**Discussion**

*I. Probable Cause for Initial Entry and Sweep Search*

A warrantless search is per se unreasonable even if there is probable cause, unless the search falls within a recognized exception to the warrant requirement. *See Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). One of these recognized exceptions to the warrant requirement exists when police officers have probable cause to search an area *and* exigent circumstances exist which make it unrealistic to obtain a warrant. *See Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 299, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

The probable cause in this case begins with an anonymous tip. In order to determine whether an anonymous tip offers the requisite probable cause, the Supreme Court looks to the totality of circumstances analysis. *See Alabama v. White*, 496 U.S. 325, 328, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Totality of circumstances analysis includes looking at an informant's veracity, reliability, and basis of knowledge. *See Id.* An anonymous tip must also contain "sufficient indicia of reliability to justify a forcible stop." *See Id.* The anonymous tip in question stated that on September 22, 2000, Ricky Turner would receive a large amount of cocaine from a very dark, thin, black male between 10 and 11 o'clock in the morning. It also gave Turner's address and the make and model of two vehicles Turner might be driving. The tipster gave a home phone number and a cell phone number and stated that Turner would be carrying a pistol. According to testimony, it cannot be said that police officers corroborated any information about Turner's address, vehicles, or phone numbers. Police officers retrieved a booking photo of a Ricky Turner and

showed up at the address stated in the anonymous tip. The tipster's voice sounded female according the detectives. The tipster gave no information about herself, and there was no information about how she came to know about the drug deal. She did not mention that she had seen drugs first hand in Turner's home, or that she in any way had first-hand knowledge of this information. Detective Ura specifically stated in his testimony that he had no information about the anonymous tipster's reliability. (Dkt. 57, pg 75).

In *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301, an anonymous tip was received that detailed the events that a particular woman would partake in and informed police that she had drugs in her possession. The Court stated that the tip alone did not provide the necessary indicia of reliability, but that after police officers followed the woman and corroborated much of the tipster's information, the tipster could be said to be truthful and honest thereby increasing the indicia of reliability.

*White* also compares its case with that of *Gates*, which also "dealt with an anonymous tip in the probable cause context." *Id.* The difference between *Gates* and *White*, is that in *Gates*, a warrant, which was already issued by a magistrate, was in question. In *White*, it was simply a Terry stop, which required a lesser degree of suspicion. *Id.* at 329, 110 S.Ct. 2412. The instant case falls between these two cases since a Terry stop only extends to a persons' body and not to a persons' home, and the police never approached a judge to issue a warrant. The *Gates* opinion stated that "an anonymous tip alone seldom demonstrates the informant's" level of reliability. *Id.* Given that the police entered Turner's home after a minute to a minute and a half of forcibly beating on the door, this case does not fall into the requirements of a Terry stop.

■ This Court must require both probable cause and exigent circumstances to be present in order to uphold the search and seizure of the items found. However, since probable cause requires more than solely an anonymous tip, and no police officer or other official has been able to state that they themselves verified any information other than a booking photo, this Court deems that there was no probable cause for the initial entry and sweep search of Turner's apartment.

## II. Exigent Circumstances

■ In order for a warrantless search to be reasonable, it must fit into one of the narrowly defined exceptions. The exception in this case is that both probable cause and exigent circumstances must exist. Exigent circumstances apply only when the delay of obtaining a search warrant risks "flight or escape; danger of harm to police officers or the general public; risk of loss, destruction, removal, or concealment of evidence and 'hot pursuit' of [a] fleeing suspect." *United States v. Santa*, 236 F.3d 662, 669 (11th Cir.2000) (quoting *United States v. Blasco*, 702 F.2d 1315, 1325 (11th Cir.1983)). It is well settled that there are not normally exigent circumstances when suspects are unaware of police surveillance. *See Id.* at 669–670.

■ In the instant case, the police made the suspects aware of the police presence and thus created the exigent circumstances. When exigent circumstances are created by law enforcement, no exigency exists; rather the police simply failed to comply with the Fourth Amendment's warrant requirement. *Id.* at 670. Since there were no exigent circumstances, and both probable cause and exigent circumstances are required for a warrantless search of a home, this Court finds that the initial en-

try and sweep search were illegal. Therefore, the evidence seized during the initial entry and sweep search, the drug scale and the small quantity of marijuana, could not provide a legal basis to detain or arrest the Defendants and should be suppressed in this case.

### III. Ricky Turner's Consent to Search

#### A. Coercive circumstances

 Magistrate Judge Scriven thoroughly covered whether Ricky Turner's consent to search his apartment was voluntary. While it is true that an individual's voluntary consent waives the right to Fourth Amendment protection, the voluntariness of the consent must be viewed in light of the totality of the circumstances. *United States v. Gonzalez,* 71 F.3d 819, 830 (11th Cir.1996). In the instant case, Turner, after watching police conduct a protective sweep search of his apartment, was handcuffed and placed in the back of a police vehicle, behind a plexiglass shield. The air conditioning in the vehicle was on low and no air vents were located in the back seat. Turner received no air conditioning during the hour and a half he was in the police vehicle. It was a hot September day in Tampa, Florida. Turner was sweating so profusely that Detective Ura had to wipe his face at least twice. Turner asked if the heat was on inside the car. Turner asked with what he had been charged and the detective stated that he was not charged with anything.

Police did take Turner out of the car and allowed him to call his father. They allowed Turner to consult with his father during this hour and a half time period. However, regardless of the police intention, or lack of intention, to "sweat him out," it is the perception of the defendant, in custody, without reason, with lack of air, watching as police had already entered his home, and the only advice given by police was that they would get a warrant anyway, that gives rise to the totality of the circumstances. Turner did not freely and voluntarily give consent. Turner merely submitted to a claim of lawful authority under coercive circumstances.

#### B. Attenuating circumstances

 The government contends, "[I]f a defendant gives consent to search at a time that is sufficiently attenuated from the illegal arrest or search, Courts will not suppress evidence discovered during this illegal activity." (Dkt. 67, pg 14; citing *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). The government also uses the example of *United States v. Edmondson,* 791 F.2d 1512, 1515–16 (11th Cir.1986). However, in *Edmondson,* the defendant was arrested and taken to the FBI office. *Id.* at 1514. He was not held at the scene or continuously asked for consent while he sat handcuffed in the back of a police vehicle with no air on a hot Florida day. Likewise, the *Milian–Rodriguez* case, Milian was taken to the United States Customs headquarters. *United States v. Milian–Rodriguez,* 759 F.2d 1558, 1565 (11th Cir.1985). He was not held in the same manner, described above, as Turner. This Court finds that there were no attenuating circumstances that would sufficiently separate the illegal search and arrest from the Turner's involuntary consent. Accordingly, it is

**ORDERED** that the Motion to Suppress Evidence (Dkt.40) be Granted and the evidence be suppressed as addressed in the motion.