2007 UT 23

STATE of Utah, Plaintiff and Petitioner,

v.

Bernadette DURAN, Defendant and Respondent.

No. 20051070.

Supreme Court of Utah.

March 9, 2007.

Mark L. Shurtleff, Att'y Gen., Jeanne B. Inouye, Asst. Att'y Gen., Salt Lake City, Gene E. Strate, Price, for plaintiff.

Samuel S. Bailey, Price, for defendant.

NEHRING, Justice:

¶ 1 The issue presented in this case is whether the detectable odor of burning marijuana creates an exigent circumstance permitting a warrantless search of a residence. We hold that it does not.

## BACKGROUND

¶ 2 This case presents a purely legal issue. Our recounting of the facts is therefore spare. On April 22, 2003, the brother and the mother of Lance Horvath called police officers to report that people were smoking marijuana inside Mr. Horvath's trailer, which was located on his mother's property. When officers arrived about forty minutes later, the brother reported that he had personally observed people in the trailer smoking marijuana and warned that, although Mr. Horvath was away at the time, he kept guns in his trailer and had threatened to use them against the police.

¶ 3 The police officers later testified that as they approached the trailer, they could smell the faint but unmistakable odor of "marijuana leakin' out of the cracks of the trailer." Concluding that time was of the essence because the occupants were "in the very process of smokin' up the evidence," the officers entered the trailer without first obtaining a warrant. Inside the trailer, the officers found controlled substances, several

firearms, and three individuals, including the defendant, Bernadette Duran.

¶ 4 At trial, the court denied Ms. Duran's motion to suppress the evidence found in the warrantless search. The court of appeals reversed, holding that although the odor of marijuana to which the officers testified gave rise to probable cause for a search, it did not create exigent circumstances that would justify their warrantless search of the trailer. *State v. Duran*, 2005 UT App 409, ¶ 23, 131 P.3d 246.

## ANALYSIS

¶ 5 On certiorari, we review the decision of the court of appeals, not that of the trial court. *State v. Krukowski*, 2004 UT 94, ¶ 10, 100 P.3d 1222. The issue of whether a warrantless search of a residence is reasonable under the Fourth Amendment is a question of law, which we review for correctness. *See State v. Peterson*, 2005 UT 17, ¶ 8, 110 P.3d 699.

¶ 6 We decline to grant the aroma of burning marijuana a place on an exclusive, limited roster of exceptions to the requirement that a warrant be secured before a lawful search can occur. The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their ... houses ... against unreasonable searches and seizures." As the United States Supreme Court has stated, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. U.S. Dist. Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). Accordingly, "searches and seizures inside a home without a warrant are presumptively unreasonable," even when officers have probable cause to search. *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

¶ 7 The Supreme Court has recognized, however, a few narrow exceptions to this warrant requirement. Under the exigent circumstances exception, officers may search a residence without a warrant where a "specially pressing or urgent law enforcement need," *Illinois v. McArthur*, 531 U.S. 326, 331, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001), makes "the warrantless search ... objectively reasonable under the Fourth Amendment," *Mincey v. Arizona*, 437 U.S. 385, 394, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). The Court has identified prevention of the "imminent destruction of evidence" as one such pressing need. *Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990).

¶ 8 We, too, have "sustained warrantless entries where the circumstances indicated that evidence might be destroyed or removed if entry was delayed until a warrant could be obtained." *State v. Ashe*, 745 P.2d 1255, 1258 (Utah 1987). To be clear, this does not include "the mere possibility that evidence may be destroyed." *State v. South*, 885 P.2d 795, 800 (Utah Ct.App.1994), *rev'd on other grounds*, 924 P.2d 354 (Utah 1996). Rather, police officers must have a reasonable belief that the destruction of evidence is sufficiently certain as to justify a warrantless entry based on exigent circumstances. We find, however, that the detectable odor of burning marijuana is inadequate, standing alone, to support such a reasonable belief. The aroma of burning marijuana must be accompanied by some evidence that the suspects are disposing of the evidence, as opposed to casually consuming it, before law enforcement officials may be lawfully justified in claiming the benefit of the exigent circumstances exception.

¶ 9 We decline to pare back a fundamental constitutional guarantee where the commission of an offense—in this case, smoking marijuana—involves as its incidental but inevitable consequence the destruction of evidence. According to the testimony of the police officers who conducted the warrantless entry in this case, the marijuana was being "destroyed" by persons who were "in the very process of smokin' up the evidence." This is an odd departure, indeed, from the circumstances that typically attend destruction of evidence exigencies. In most instances, an exigency arises from the possibility that persons, alerted to the presence of law enforcement officials seeking to execute a search warrant, might understandably rid themselves of any trace of contraband. *See United States v. Tobin*, 923 F.2d 1506, 1511

(11th Cir.1991) (en banc) (holding that exigent circumstances were present where "the [law enforcement] agents could reasonably conclude from the defendants' hurried actions and furtive looks that [they] were either aware or afraid that someone was watching them [and][d]estruction or removal of . . . the narcotics was therefore a possibility" (footnote omitted)). The reverse is also true, as it is well-recognized that "[c]ircumstances are not normally considered exigent where the suspects are unaware of police surveillance." *Id.* at 1511; *see, e.g., United States v. Elkins,* 300 F.3d 638, 656–57 (6th Cir.2002); *United States v. Davis,* 170 F.Supp.2d 1234, 1239 (M.D.Fla.2001).

¶ 10 A person bent on destroying contraband may well turn to ingesting it to avoid its detection. *See State v. Alverez,* 2006 UT 61, 147 P.3d 425. It is nevertheless unlikely that a person in possession of contraband, like marijuana, would be so consumed by paranoia as to dispose of the contraband by ingestion, having no reason to suspect that law enforcement might be alerted to the illegal activities. We are unable, therefore, to identify the existence of an exigency under circumstances that require equating the consumption of contraband with destruction of evidence where the persons affected by the search had no apprehension that law enforcement had them in their sights.

¶ 11 In this case, Ms. Duran made no effort, hurried or otherwise, to dispose of her marijuana in order to prevent its discovery by law enforcement. Until the warrantless entry of law enforcement officers into the trailer, she remained unaware of any police involvement and had no objective reason to "destroy" the marijuana, as that term is commonly understood. In fact, it is likely that no one involved in this episode was more dismayed at the prospect of the destruction of "evidence" than Ms. Duran.

¶ 12 Further, nothing in the record suggests that law enforcement had reason to believe that the evidence of drug use would be destroyed if the officers had delayed their intrusion until they secured a warrant. Because Ms. Duran was unaware of the police presence, it is unlikely that all traces of her drug use would have disappeared from the trailer in the time it took law enforcement to obtain a warrant. Presumably, even if some of the marijuana was destroyed through the process of smoking while law enforcement sought a warrant, some evidence of drug use would linger in the form of residue, smoking paraphernalia, and some quantity of unsmoked marijuana. The officer's statement that Ms. Duran was "smokin' up the evidence" nicely underscores the obvious conclusion that the officers were not confronting the conflagration of the contraband that a reasonable person would associate with the destruction of evidence.

¶ 13 We also decline to sanction the warrantless search in this context because we fear that it would be difficult to leash warrantless searches in other contexts in which consumption and destruction of evidence merge. It is certainly not far-fetched to envision law enforcement officers exploiting the rationale that consumption of contraband is also evidence destruction to justify warrantless searches in other contexts. After all, the exigency present here is not appreciably different from a report of consumption of alcohol by underage persons in a dwelling. Like smoking marijuana, underage drinking is a jailable offense crime in which the criminal act involves simultaneous consumption of contraband and destruction of evidence. *See* Utah Code Ann. §§ 32A–12–104, –209(1) (2005). Also, olfactory-based probable cause could, under a doctrine that equated consumption of contraband with destruction of evidence, permit a law enforcement officer to claim exigent circumstances to justify a warrantless search to apprehend eighteen-year-olds believed to be smoking tobacco. *See* Utah Code Ann. § 76–10–105 (2006) ("Any 18 year old person who buys or attempts to buy, accepts, or has in his possession any cigar, cigarette, or tobacco in any form is guilty of a class C misdemeanor. . . .").

¶ 14 In short, the costs that would accompany a merger of consumption of contraband and destruction of evidence—i.e., an increase in questionable warrantless searches, a corresponding decrease in personal privacy, a decreased incentive for law enforcement to seek a warrant before conducting a search, and a further erosion of Fourth Amendment

protections—outweigh the benefits accruing to the state in more efficient law enforcement. As a society, we have little to lose and much to gain by insisting that the definition of "imminent destruction of evidence" necessary to create an exigent circumstance be limited to the common understanding of evidence "destruction"—disposal of, not consumption of, contraband.

¶ 15 Contributing to our confidence that this is the correct conclusion is our belief that we should, as a general proposition, narrowly construe the reach of exceptions to fundamental constitutional rights. This principle is well-suited to this occasion. While it is true that marijuana is destroyed during the process of smoking, we hold that this does not, without more, create an exigent circumstance sufficient to justify a warrantless search.

¶ 16 The State looks to *Illinois v. McArthur* to support the proposition that a warrantless search based on exigent circumstances can be justified when the suspected crime giving rise to the search is a "jailable offense." 531 U.S. 326, 121 S.Ct. 946 (2001). This is correct, but *McArthur* also supports our position that, although probable cause of marijuana use could justify a warrantless search based on exigent circumstances, no exigency was present here. In *McArthur*, the United States Supreme Court held that it was reasonable for law enforcement officers to prevent a man from entering his home while they took the steps necessary to obtain a warrant when they had probable cause to believe that the man had marijuana in his home. *Id.* at 333, 121 S.Ct. 946. Noting that the Fourth Amendment's " 'central requirement' is one of reasonableness," the *McArthur* Court "balance[d] the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable." *Id.* at 331, 121 S.Ct. 946 (quoting *Texas v. Brown*, 460 U.S. 730, 739, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)). The Court held that the seizure was reasonable based on four factors: (1) the police had probable cause to believe that there was evidence of "crime and contraband" in the home, i.e., illegal drugs; (2) the police had good cause to believe that the suspect would destroy the evidence before they could obtain a warrant, unless he was restrained; (3) "the police made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy" by "neither search[ing] the trailer nor arrest[ing the suspect] before obtaining a warrant"; and (4) the police blocked entry to the home for only a limited amount of time—two hours. *Id.* at 331–32, 121 S.Ct. 946. Further, the Court explained, "We have found no case in which this Court has held unlawful a temporary seizure that was supported by probable cause and was designed to prevent the loss of evidence while the police diligently obtained a warrant in a reasonable period of time."[1] *Id.* at 334, 121 S.Ct. 946.

¶ 17 When applied to this case, the relevant considerations identified in *McArthur* do not support a finding of exigency. While no one disputes that the odor of burning marijuana was evidence of a "crime or contraband" in the trailer, the only basis upon which the police could conclude that Ms. Duran would "destroy" the evidence before a warrant could be obtained was their belief that she would "smoke it up." Unlike Mr. McArthur, who knew that the police were onto him, Ms. Duran did not know that law enforcement officers were aware of the presence of marijuana in the trailer until they broke through the door. Most significantly, there is no indication that the law enforcement officers engaged in any effort, much less a reasonable one, to reconcile their law enforcement needs with the demands of personal privacy. In fact, to the extent that the officers engaged in any assessment of competing interests related to the acquisition of a warrant, they balanced their desire to avoid the inconvenience of seeking a warrant against Ms. Duran's privacy interests and concluded that convenience was more important. We cannot countenance this attempt at "reconciliation" and at the same time keep faith with our duty to interpret and apply

---

1. The Court also explained that allowing conditioned reentry based on police observation would also be reasonable while steps were taken to promptly obtain a warrant. *Illinois v. McArthur*, 531 U.S. 326, 335, 121 S.Ct. 946 (2001).

fundamental constitutional guarantees. We therefore affirm the court of appeals.

¶ 18 Chief Justice DURHAM, Justice DURRANT, and Justice PARRISH concur in Justice NEHRING'S opinion.

WILKINS, Associate Chief Justice, dissenting:

¶ 19 I respectfully dissent.

¶ 20 This case is factually different in a major way from *Illinois v. McArthur*, 531 U.S. 326, 121 S.Ct. 946 (2001). In *McArthur*, the Supreme Court addressed a circumstance where the defendant and the "evidence" were physically separated, and remained so (through police action) for the two hours necessary for police to obtain a warrant to enter and search the residence. In this matter, however, Ms. Duran and her companions were in a small trailer with the "evidence" and the police were on the outside. There was no way for the police to separate the defendant and her companions from the illegal drugs for the time necessary to obtain a warrant without first alerting them to the presence of the police. Alerting the defendant to the presence of the police would certainly have increased the risk of destruction of the evidence, as well as increasing the danger of a violent confrontation.

¶ 21 Additionally, the officers had no way of knowing that the defendant and her companions were unaware of the presence of law enforcement prior to the time of entry, nor that they would have remained unaware during the time necessary to secure a warrant. We also know nothing of the time actually necessary to obtain a warrant. The fact that officers did not seek a warrant does not answer questions regarding how long it would have taken under these circumstances, or whether or not the presence of law enforcement would have been observed or discovered by the occupants of the trailer during that period.

¶ 22 We do know that when officers arrived they were reliably informed that there was illegal drug use going on in the trailer, there were guns in the trailer, and that in addition to Ms. Duran there were other adults in the trailer. We also know that the officers were informed that the tenant to whom the trailer had been rented was not then present, but that he owned the guns, was known to be violent, and could return at any time.

¶ 23 Under these circumstances the officers did not seek a warrant. Much of the discussion focuses on the reasons given after the fact for why the officers sought no warrant in this instance. I fail to see the relevance of the reasons given. What should matter in our review is the sum total of objectively observable facts presented to the officers at the time and upon which they could act.

¶ 24 In addition to the initial report from the on-the-scene witnesses, the officers testified that they smelled the unmistakable odor of burning marijuana. The officers testified that they believed the defendant and her colleagues were "smokin' up the evidence" since they smelled marijuana smoke and saw smoke "leakin' out of the cracks of the trailer." What quantity of marijuana was in the process of being burned, by whom, and with what end in mind, was unknown to the officers. Without being able to observe the burning first hand, they had only the odor, the smoke, and the report made by the informant. The officers had no other data upon which to rely in making their decision about whether or not to delay their enforcement action while a warrant was obtained.

¶ 25 Supposition does not replace fact. We simply do not know now, nor did the officers at the time know, what Ms. Duran and her colleagues were doing, thinking, or most concerned with, when the police made their decision to enter. Moreover, regardless of explanations given later by the officers, if the facts at the time justified warrantless entry, the trial court was correct in denying the motion to suppress evidence found in the trailer when police did finally enter. If not, it was not.

¶ 26 On certiorari we have agreed to address the limited question of whether or not the detectable odor of burning marijuana alone is enough to justify an exception to the warrant requirement of the Fourth Amendment. My colleagues say that it is not, as

did the court of appeals. I say that it may be, and that in this particular case it is.

¶ 27 As we said in *State v. Ashe,* warrantless entries may be sustained "where the circumstances indicated that evidence *might* be destroyed or removed if entry was delayed until a warrant could be obtained." 745 P.2d 1255, 1258 (Utah 1987) (emphasis added). The circumstances must be viewed from the perspective of law enforcement officers at the time the decision to seek or not seek a warrant is made, not in the clear reflected light of appellate review after the fact.

¶ 28 What matters in our review is the factual circumstances of the entry. In a case where illegal drugs are being burned out of sight but not out of smell, and where the quantity of drugs is unknown to the officers, a presumption that the drugs are being destroyed rather than merely consumed is not unreasonable. Adding knowledge of firearms on the premises, a violent tenant whose whereabouts and time of return are unknown, and multiple parties engaged in the illegal activity, I would uphold the law enforcement decision to proceed without a warrant. In addition, we must consider the passage of time already noted between the observation of the activity by the informant and the arrival of the officers, and the additional time required to secure the warrant. With the drugs, the guns, and the defendants inside, and the officers outside, passing time increases the likelihood that the officers will be discovered, the absent tenant may return, or the drugs may be disposed of by means other than mere recreational use.

¶ 29 Any close call must go to securing a warrant. The Fourth Amendment requires no less. However, this was not a close call. Given facts like those presented to the officers in this case, and where, as here, probable cause to secure the warrant is unquestionably present, I believe the Fourth Amendment permits the entry without a warrant. I do not find such police action to be unreasonable. To the contrary, I find it reasonable, and consequently not proscribed by the Fourth Amendment's ban on unreasonable searches. Protecting the rights of citizens does not necessarily require the handcuffing of police. I would allow law enforcement agents to consider the circumstances and act as objective reasonableness dictates.

¶ 30 I would reverse the court of appeals, affirm the trial court, and answer the question presented on certiorari with "perhaps."