**2018 UT App 92**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JEREMY ROBERTS,
Appellant.

Opinion
No. 20170133-CA
Filed May 24, 2018

Sixth District Court, Manti Department
The Honorable Marvin D. Bagley
No. 151600122

Ryan N. Holtan, Attorney for Appellant

Sean D. Reyes and Nathan D. Anderson, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
GREGORY K. ORME and DIANA HAGEN concurred.

HARRIS, Judge:

¶1      In the course of executing a search warrant for a stolen
cell phone at Defendant Jeremy Roberts's home, a police officer
(Officer) discovered three prescription pill bottles that contained
various pills and that were labeled with names other than
Defendant's. A short time later, Officer sought and received a
second warrant to search Defendant's property for drugs and, in
the course of executing that second warrant, Officer discovered
methamphetamine, heroin, marijuana, and drug paraphernalia.
After being charged with various drug-related crimes,
Defendant moved to suppress the evidence discovered pursuant
to the second warrant, but the district court denied his motion.
Defendant eventually pleaded guilty to one count of possession
or use of a controlled substance, while reserving the right to

appeal the denial of his motion to suppress. After review, we conclude that the district court correctly denied Defendant's motion to suppress, and therefore affirm.

BACKGROUND

¶2 A shopper's cell phone was stolen from a supermarket in Gunnison, Utah. The shopper contacted local law enforcement officers, who arranged to send a signal to the phone and thereby determined that its SIM card[1] had last been located at Defendant's residence. Thereafter, local law enforcement officers visited Defendant's residence and questioned Defendant about the phone and, while he initially denied any knowledge of the phone, Defendant eventually stated that "some kids from Fillmore" had arrived at his residence with a phone and that he had recommended they return the phone to the supermarket.

¶3 The officers then contacted the supermarket and learned that someone had returned a phone matching the description of the shopper's cell phone. The returned phone, which was the same model as the shopper's phone, was damaged and missing its SIM card. The officers showed the phone to the shopper, who was unable to identify the returned phone as his. Officer then returned to Defendant's residence and questioned him about the phone for a second time. Defendant again began by denying that he knew anything about the phone, then repeated his assertion that "some kids from Fillmore" had shown up with the phone, then began to give "vague" and "very inconsistent" answers to Officer's questions about both the "kids from Fillmore" and the

---

1. A "subscriber identification module" or "SIM card" is a small circuit that stores the information necessary to identify and authenticate subscribers on a mobile network. SIM cards are transferable between mobile devices, allowing users to use their specific mobile plan subscriptions with a new device by transferring their SIM card into that device.

phone. Suspicious of Defendant's answers, Officer electronically applied for, and received, a warrant to search Defendant's residence for the phone and its SIM card. Officer served the warrant on Defendant and began the search.

¶4 Officer entered the front door of Defendant's residence, which opened directly into a kitchen. While searching the kitchen, Officer opened a cabinet and found several prescription bottles. Some of the bottles were labeled, but none of the labels bore Defendant's name; indeed, the medications had apparently been prescribed to three different people, none of whom lived in Defendant's residence. The label for one of the bottles indicated that it contained "duloxetine," an anti-depressant and pain reliever. Two of the bottles contained unlabeled mixed pills.

¶5 After finding these bottles, Officer was informed by another officer on the scene that the SIM card for the missing phone had been found on Defendant's lawn. At that point, Officer ceased his search for the phone, exited Defendant's residence, and electronically applied for a second search warrant. In his affidavit supporting this application, Officer indicated that he had reason to believe that, due to Defendant's possession of "several prescription bottles with pills inside that are prescribed to people that do not live at [Defendant's] residence," Officer would find additional "[p]rescription drugs, drug paraphernalia," and/or "drugs" inside Defendant's residence. A magistrate promptly granted Officer's request for a second search warrant. Soon thereafter, Officer served the second warrant on Defendant, and during the search Officer found heroin, methamphetamine, marijuana, and various items of drug paraphernalia in Defendant's house.

¶6 The State charged Defendant with use or possession of heroin, use or possession of methamphetamine, use or possession of marijuana, and two counts of use or possession of drug paraphernalia. Defendant moved to suppress all of the evidence obtained by the execution of the second search warrant, arguing that the second search warrant was not supported by

probable cause. The district court denied Defendant's motion to suppress, holding that the facts in Officer's second affidavit were sufficient to support the magistrate's determination that the warrant was based on probable cause. After the denial of his motion to suppress, Defendant pled guilty to one count of use or possession of a controlled substance, a third degree felony, while reserving the right to appeal the denial of his motion to suppress.[2]

ISSUE AND STANDARD OF REVIEW

¶7    The sole issue on appeal is whether the district court erred in denying Defendant's motion to suppress. "We review a [district] court's decision to grant or deny a motion to suppress for an alleged Fourth Amendment violation as a mixed question of law and fact." *State v. Fuller*, 2014 UT 29, ¶ 17, 332 P.3d 937. "While the court's factual findings are reviewed for clear error, its legal conclusions are reviewed for correctness, including its application of law to the facts of the case." *Id*.

ANALYSIS

¶8    The United States Constitution requires that search warrants "be issued only 'upon probable cause.'" *Id*. ¶ 22 (quoting U.S. Const. amend. IV). Probable cause is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—[that is] not readily, or even usefully, reduced

---

2. With the consent of the prosecution and the acceptance of the trial judge, a defendant may enter a conditional guilty plea, while "preserv[ing] [a] suppression issue for appeal." *State v. Sery*, 758 P.2d 935, 938–40 (Utah Ct. App. 1988), *disagreed with on other grounds by State v. Pena*, 869 P.2d 932 (Utah 1994). "A defendant who prevails on appeal [after entering a *Sery* plea] shall be allowed to withdraw the plea." Utah R. Crim. P. 11(j).

to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Instead, probable cause determinations are governed by a "totality-of-the-circumstances analysis." *Id.* at 233. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. "[P]robable cause is a low standard." *See State v. Goins*, 2017 UT 61, ¶ 35 (citation and internal quotation marks omitted). Indeed, the probable cause standard "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates*, 462 U.S. at 243 n.13; *see also State v. Bartley*, 784 P.2d 1231, 1235 (Utah Ct. App. 1989) (stating that "[t]he quantum of evidence needed for probable cause is significantly less than that needed to prove guilt").

¶9      "Where a search warrant supported by an affidavit is challenged as having been issued without an adequate showing of probable cause, our review focuses on the magistrate's probable cause determination." *State v. Walker*, 2011 UT 53, ¶ 13, 267 P.3d 210 (emphasis omitted) (citation and internal quotation marks omitted). Specifically, we examine "whether the magistrate had a substantial basis for determining that probable cause existed." *Id.* (citation and internal quotation marks omitted). On appeal, we afford a magistrate's decision "great deference and consider the affidavit relied upon by the magistrate in its entirety and in a common sense fashion." *Id.* (citation and internal quotation marks omitted).

¶10     Defendant asserts that the second search warrant lacked probable cause because the allegations in the supporting affidavit, "even if true," did not describe criminal activity. Specifically, Defendant maintains that "[t]he possession of prescription drugs prescribed to another is not a crime unless the prescription is for a controlled substance," and notes that Officer's affidavit "makes no mention of the type of prescriptions alleged to have been present." Defendant argues that "[t]he mere presence of a prescription bottle with a label for

an individual not currently residing in the home" is insufficient to constitute grounds for a search warrant.[3] We do not find Defendant's arguments persuasive.

¶11    As an initial matter, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates*, 462 U.S. at 243 n.13. But even if proof of criminal activity were required, it was undoubtedly present in this case. Defendant simply misapprehends the law when he states that it is not a crime to possess someone else's prescription drugs unless the prescription is for a controlled substance. In fact, under Utah law it is unlawful either to possess a prescription drug for any unlawful purpose, or to use a prescription drug prescribed to another, *regardless* of whether the drug in question is listed as a controlled substance. *See* Utah Code Ann. § 58-17b-501(9), (12) (LexisNexis Supp. 2017) (making "unlawful" the "possession of a prescription drug for an unlawful purpose," and making

---

3. Defendant also points out that the judge who (acting as a magistrate) issued both search warrants was the same judge who ultimately signed the order denying the motion to suppress, even though that judge did not preside over the evidentiary hearing held in connection with the motion to suppress. Defendant infers from these facts that "the procedural posture of the ruling" on his motion to suppress "raises concerns about the sufficiency of the evidence." We see no inherent problem in having a judge who issued the original search warrant sign an order denying a motion to suppress the evidence gathered pursuant to that warrant. Indeed, a district court judge may act as both a magistrate and as a judge within the same case. *See State v. Black*, 2015 UT 54, ¶ 19, 355 P.3d 981 (stating that "we have recognized that a judge may switch between a magistrate role and a judicial role in the same case"). Defendant cites to no authority for the proposition that these procedural facts somehow infected the process in this case, and we are certainly aware of none.

"unlawful" the use of any "prescription drug or controlled substance that was not lawfully prescribed for the person by a practitioner"); *see also id.* § 58-17b-504(2) (LexisNexis 2016) (stating that violations of the above-cited provisions are class A misdemeanors).

¶12    Given that Defendant possessed several bottles of pills prescribed to three different people who did not live with Defendant, two of which contained unidentified "mixed pills," the magistrate could very reasonably have inferred that Defendant intended to either use the drugs himself or provide them to a third party (arguably an unlawful purpose). This alone provided the magistrate with a substantial basis to determine that probable cause existed to issue the second warrant. While innocent explanations may have existed for Defendant's possession of the pill bottles, the magistrate was not required to eliminate all such explanations before issuing the warrant. *See State v. Poole*, 871 P.2d 531, 535 (Utah 1994) (stating that, "[a]lthough there might be innocent explanations for particular conduct, it is not necessary that all legitimate reasons be absent before an officer finds probable cause").[4]

---

4. Defendant further argues that the magistrate's determination should be viewed with skepticism because the magistrate issued the warrant "less than five minutes" after the application was electronically sent. We find this argument unpersuasive. Judges take turns acting as the "on-call" magistrate for the purpose of electronically reviewing search warrant applications, and receive a text message (or other electronic alert) the moment an application comes in. Often, the applications are reviewed immediately upon receipt of the electronic alert. In this particular case, Officer's search warrant affidavit was only two pages long, with the probable cause statement—where all of the operative facts were contained—taking up only three paragraphs on the second page. Moreover, the magistrate was already familiar with some of the relevant facts (the identity and

(continued…)

¶13 Defendant attempts to undermine this conclusion by pointing out that he was never charged with any crime related to the prescription drugs found in his residence prior to the issuance of the second warrant, but instead was charged with crimes related to other drugs (heroin, methamphetamine, and marijuana) found at his residence pursuant to the second warrant. This argument is unavailing, however, because the crime with which a suspect is eventually charged is irrelevant to the question of whether probable cause existed in the first place. *See Devenpeck v. Alford*, 543 U.S. 146, 152–53 (2004) (noting that there is no rule that "the offense establishing probable cause must be 'closely related' to . . . the offense identified . . . at the time of arrest"). So long as probable cause existed for the magistrate to believe Officer's search of Defendant's residence would uncover evidence of a crime, it does not matter that Defendant was later charged with a different, more serious crime.

¶14 Accordingly, the magistrate correctly determined that probable cause existed for Officer to search Defendant's residence pursuant to the second search warrant.[5] Thus, the

---

(…continued)

experience of the officer, the location of the residence) from issuing the first warrant earlier that day. Under the circumstances, five minutes was not an unreasonably short time for a diligent magistrate to read, review, and comprehend the submitted material. Time is often of the essence in reviewing warrant applications. In some cases, the suspect is detained pending issuance of the warrant. Expeditious consideration of warrant applications serves the interest of justice, and we commend the magistrate in this case for his promptness.

5. The parties also briefed the issue of whether the "good faith exception" to the exclusionary rule applies here. We need not reach that issue, however, due to our conclusion that probable cause existed to support issuance of the search warrant.

district court did not err when it denied Defendant's motion to suppress the evidence obtained from execution of that warrant.

¶15    Affirmed.

_____