**2025 UT App 159**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
KYLE JOSEPH SMITH,
Appellant.

Opinion
No. 20240235-CA
Filed October 30, 2025

Third District Court, Silver Summit Department
The Honorable Richard E. Mrazik
No. 221500148

Patricia Geary Glenn, Attorney for Appellant

Derek E. Brown and Jeffrey D. Mann,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
FORSTER concurred.

MORTENSEN, Judge:

¶1 A man on probation (tenant) rented an upstairs room of a house. Kyle Joseph Smith lived in the basement. The tenant suspected Smith was using marijuana. Fearing the use might jeopardize his probation status, the tenant informed his probation officer about the situation. The probation officer suggested that the tenant record a video of the activity. When the tenant tried recording the activity, a confrontation ensued and the police were called. A police officer (deputy) arrived to investigate, and the tenant told him that Smith was getting rid of marijuana plants by moving them to the yard of the residence. Without obtaining a search warrant, and over Smith yelling "[w]hoa," the deputy walked into the yard and found some discarded marijuana plants.

Consequently, Smith was arrested and charged with operating a clandestine laboratory for the production of a controlled substance. He challenged the warrantless search, but the district court ruled that it was justified by the exigent-circumstances exception. Smith subsequently entered a conditional guilty plea, and he now appeals, arguing that the search was unconstitutional. We reject this assertion and affirm.


BACKGROUND

¶2     Smith lived in the basement of a house owned by his mother. The tenant rented a room on the upstairs level of the house. While the tenant's lease agreement did not specifically grant him permission to use other areas of the land on which the house sat, Smith's mother conceded that nothing in the lease agreement "technically" prevented the tenant from walking on the common areas of the property, including—as is relevant to this case—a non-fenced part of the yard.

¶3     The tenant called his probation officer to express a concern that "he'd seen marijuana around the house and things like that." Specifically, the tenant was "concerned about the odor of marijuana on his clothes and complained about the use of marijuana in the home he was staying in and not wanting to jeopardize his probation agreement or his employment situation." The tenant's probation officer told him to "take a picture" or a "video" to document the activity.

¶4     The tenant subsequently tried to record the marijuana-related activity, but while doing so, he encountered Smith. Smith asked the tenant, "[W]hat the fuck are you doing? Are you going to call the fucking cops?" and said, "You fucking piece of shit. I'll beat your ass." The encounter ended at that point, but the tenant believed that Smith began to move marijuana plants out of the home shortly thereafter. The tenant then called his probation officer and reported that "things had escalated between him and

. . . Smith." The probation officer called his sergeant to let him know the situation was "kind of getting out of hand." Based on the probation officer's report, the deputy was sent to the scene to investigate a possible domestic disturbance.

¶5 The tenant told the deputy that he and Smith "had gotten in a fight" and that Smith "was in the process of destroying a marijuana growth that was inside the house." More specifically, the tenant told the deputy that Smith was "growing pot" and was trying to "get rid of" the plants before the police arrived based on Smith's fear that the tenant had already called the police. The tenant proceeded to tell the deputy that he was "pretty sure there's a pile of plants in the backyard." The tenant then led the deputy to the plants.

¶6 As the deputy and the tenant walked toward the yard to see the plants, Smith appeared, and the following conversation ensued:

*Smith*: Sir! Whoa, what's going on?

*Deputy*: Just stay there, I'll talk with you in a minute.

*Smith*: Excuse me?

*Deputy*: Just stay there, I'll talk with you in a minute. He's showing me something. . . . He lives here too.

*Smith*: He doesn't live here, sir.

*Deputy*: He doesn't?

*Smith*: No.

*Deputy*: Well, he's telling me he does.

*Smith*: Excuse me?

*Deputy*: So he's telling me he does. So his word is just as good as yours at this point. What's that?

*Smith*: I'm telling you he doesn't. I'm telling you as a property owner, he does not.

> *Deputy*: Ok, he's got access to a common area, yeah, and he rents from you, so yeah, he does.
>
> *Smith*: Have you seen the paperwork already?
>
> *Deputy*: I don't need to see that at this point. You stay there, I'll come talk to you.

Smith waved his hand toward the deputy and turned around.

¶7 The deputy then took a few more steps into the yard and noticed "a shallow cardboard box full of what appeared to be marijuana plants" toward the corner of the yard. The deputy believed that "somebody had been trying to stash" the box near a "little rise that was around some sage brush." The deputy noticed that the box had "some blood" on it, and he radioed for assistance. About thirty seconds later, two other officers arrived at the scene.

¶8 During their conversation, the deputy had noticed that Smith's hand was bleeding. The deputy arrested Smith based on his possession of marijuana plants. Two days later, the probation officer obtained a search warrant for Smith's basement apartment. Officers searching the apartment found marijuana, methamphetamine, counterfeit prescription labels, scales, packaging equipment, and apparent client lists. The State charged Smith with operating a clandestine laboratory for the production of a controlled substance.

¶9 Smith moved to suppress "any and all evidence obtained as a result of the warrantless search of the property and the subsequent search of his home," arguing the initial search "was illegal because it was not conducted pursuant to any of the well-delineated exceptions to the warrant requirement." The district court held an evidentiary hearing related to the motion, where it heard testimony consistent with the facts recited above. The district court later ordered additional briefing to address, among other issues, whether "exigent circumstances" allowed the deputy

to follow the tenant for three seconds "to observe the marijuana plants" in the yard.

¶10    After the additional briefing, the district court denied the motion to suppress. First, the court concluded that it was objectively reasonable for the deputy to determine that the tenant had access to the yard. But the court concluded that the tenant's consent was "affected and made ambiguous" by Smith's assertion that the tenant did not live there and Smith's use of "[w]hoa." These statements, the court concluded, constituted an "explicit objection" to the deputy proceeding into the yard to "look for something." However, the court also determined that exigent circumstances warranted the deputy's decision to enter the yard where he observed the marijuana plants because (1) it wasn't clear that the deputy had probable cause to detain or arrest Smith at that moment and (2) he reasonably surmised that Smith knew why he was there, given that Smith's altercation with the tenant stemmed from the tenant's attempt to record the marijuana-related activity. Had the deputy retreated when Smith objected to the search, the court concluded that it was "reasonably likely that the evidence in the . . . yard would have been destroyed." The court concluded that given the exigent circumstances supporting the warrantless search, "no Fourth Amendment violation occurred in this case."

¶11    Following the denial of his motion to suppress, Smith entered a conditional guilty plea to a reduced charge of attempted possession of 100 pounds or more of marijuana, reserving his right to appeal the denial of the motion to suppress.

ISSUE AND STANDARD OF REVIEW

¶12    Smith contends that the district court erred in denying his motion to suppress, arguing that there were no exigent circumstances justifying a warrantless search. "We review a district court's decision to . . . deny a motion to suppress for an

alleged Fourth Amendment violation as a mixed question of law and fact. While the court's factual findings are reviewed for clear error, its legal conclusions are reviewed for correctness, including its application of law to the facts of the case." *State v. Roberts*, 2018 UT App 92, ¶ 7, 427 P.3d 416 (cleaned up).

ANALYSIS

¶13   "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. This constitutional right "generally requires the obtaining of a judicial warrant before a law enforcement officer can enter a home without permission. But not always: The warrant requirement is subject to certain exceptions." *Lange v. California*, 594 U.S. 295, 301 (2021) (cleaned up). "One important exception is for exigent circumstances. It applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable." *Id.* (cleaned up). In the face of an exigent circumstance, "the delay required to obtain a warrant would bring about some real immediate and serious consequences—and so the absence of a warrant is excused." *Id.* at 302 (cleaned up). Given an exigency, "a warrantless search is reasonable, and thus does not run afoul of the Fourth Amendment, because the legitimate state interest served by the intrusion outweighs individual interests shielded by the Fourth Amendment." *State v. Tran*, 2024 UT 7, ¶ 24, 545 P.3d 248 (cleaned up); *see also Lange*, 594 U.S. at 301 ("As [the] text makes clear, the ultimate touchstone of the Fourth Amendment is reasonableness." (cleaned up)).

¶14   Preventing "the imminent destruction of evidence" is among the exigencies that allow a warrantless search. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). The Utah Supreme Court has "sustained warrantless entries where the circumstances indicated that evidence might be destroyed or removed if entry

was delayed until a warrant could be obtained." *State v. Duran*, 2007 UT 23, ¶ 8, 156 P.3d 795 (cleaned up). But there must be more than "the mere possibility that evidence may be destroyed." *Id.* (cleaned up). "Rather, police officers must have a reasonable belief that the destruction of evidence is sufficiently certain as to justify a warrantless entry based on exigent circumstances." *Id.*; *see also State v. Beavers*, 859 P.2d 9, 18 (Utah Ct. App. 1993) ("The existence of exigent circumstances must be based on the reasonable belief of the police officer."). This reasonable belief "does not require certainty." *Tran*, 2024 UT 7, ¶ 36. Instead, the exigent-circumstances exception "is most naturally considered by looking to the totality of circumstances confronting the officer *as he decides* to make a warrantless entry." *Lange*, 594 U.S. at 302 (emphasis added) (cleaned up). Thus, courts "determine the existence of exigent circumstances by considering the totality of the circumstances, viewed at the *moment* the police" decide to proceed with a warrantless entry. *United States v. Villagomez-Castillo*, No. 89-50688, 1990 WL 212603, at *2 (9th Cir. Dec. 20, 1990) (cleaned up); *accord United States v. George*, 883 F.2d 1407, 1415 (9th Cir. 1989). "Accordingly, all that the Fourth Amendment requires is that the totality of the circumstances supports an objectively reasonable belief that an emergency exists." *Tran*, 2024 UT 7, ¶ 36. Simply put, the belief that exigent circumstances exist must not be based on speculation but on the facts before an officer and the reasonable inferences drawn from those facts.

¶15 The circumstances in this case establish that the exigency of preventing the destruction of evidence justified the deputy's warrantless entry into the yard where the marijuana plants were located.

¶16 First, the deputy had probable cause to believe that Smith was growing marijuana plants based on the tenant's report to his probation officer as well as the tenant's explicit assertion that Smith was "growing pot." "It is well-established in this state that the articulable facts supporting reasonable suspicion may come

from an officer's own observations as well as *external information* such as an informant's tip via police dispatch, or information, bulletins or flyers received from other law enforcement sources." *State v. Kohl*, 2000 UT 35, ¶ 13, 999 P.2d 7. Moreover, the fact that the tenant was on probation and made the report to his probation officer to avoid additional legal trouble supports the conclusion that he was a trustworthy informant. *See State v. Lee*, 863 P.2d 49, 56 n.12 (Utah Ct. App. 1993) ("[T]hat such information would find its way to a probation officer and be reliable is much more understandable when one learns the source of the information is himself on probation."). After all, lying about the matter would have exposed the tenant to criminal prosecution, and additional legal trouble was something he very much wanted to avoid while on probation—in fact, it was the express reason he made the report. *See State v. Roybal*, 2010 UT 34, ¶ 16, 232 P.3d 1016 ("Because the informant is exposed to possible criminal and civil prosecution if the report is false, a tip from an identified citizen-informant is generally considered highly reliable." (cleaned up)). In other words, the tenant's report of Smith's marijuana-related activity was reliable because lying about it would have run counter to the tenant's own interests. He was highly motivated to tell the truth, and the deputy acted reasonably in believing that his assertion was truthful.

¶17    Second, the circumstances supported a reasonable belief on the deputy's part that Smith was in the process of destroying evidence, giving rise to an exigency. A court "looks to the totality of circumstances," *Missouri v. McNeely*, 569 U.S. 141, 149 (2013), to determine whether "an exigency arises from the possibility that persons, alerted to the presence of law enforcement officials . . . might understandably rid themselves of any trace of contraband," *Duran*, 2007 UT 23, ¶ 9. And here, the totality of the circumstances provided a reasonable basis for the deputy to conclude that Smith

would destroy the marijuana plants if the deputy left to obtain a warrant.[1]

¶18　The tenant told the deputy a few minutes after his arrival that Smith was trying to "get rid of" the plants before the police arrived because Smith suspected that the tenant had called the police about his marijuana-related activity. Smith's prior interaction with the tenant alerted him to the possibility that the tenant was going to call the police about his marijuana-related activity. Indeed, the tenant's efforts to record Smith's marijuana-related activity had resulted in a confrontation between the two and provided the impetus for the probation officer to request that his sergeant send a deputy to investigate. When Smith saw that his fears of police involvement were realized, he had every reason to continue getting rid of the plants. Aware of these circumstances, the deputy was reasonable in concluding that Smith would attempt to destroy the evidence if he left to get a warrant.

¶19　These facts, considered together, gave the deputy objective reason to believe that the destruction of the plants was more than a mere possibility. Indeed, the circumstances indicated that it was reasonable to infer that Smith was *actively engaged* in destroying the plants. And the deputy, aware of these circumstances, could have reasonably concluded that Smith would continue trying to destroy the plants if left to his own devices.

¶20　Smith resists this conclusion on several grounds. First, he argues that the proximity of the other officers suggests that the deputy should have taken a less intrusive approach than entering the yard. He asserts that the deputy could have simply waited for

---

1. While the deputy could have quickly obtained an e-warrant, *see State v. Smith*, 2022 UT 13, ¶ 36 n.7, 513 P.3d 629, his doing so would have still required him to leave the scene, which would have provided an opportunity for Smith to dispose of the plants.

the other officers to arrive to secure the scene and ensure that the evidence would not be destroyed, which would have provided the deputy with the opportunity to secure a search warrant. This assertion is misguided and unsupported by the factual record. Here, the deputy had no other officers with him when he arrived. It was only after he saw the marijuana plants that he called for assistance. There is no indication in the record that the deputy knew whether the other officers could respond in thirty seconds. The relevant inquiry involved whether there was "the existence of exigent circumstances . . . at the *moment*" the deputy proceeded with the warrantless entry. *United States v. Villagomez-Castillo*, No. 89-50688, 1990 WL 212603, at *2 (9th Cir. Dec. 20, 1990) (cleaned up); *see also State v. Anderson*, 2013 UT App 272, ¶ 12, 316 P.3d 949 ("It is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search [lead a reasonably cautious person to believe] that the intrusion the officer plans is justified in order to investigate criminal activity?" (cleaned up)). The after-the-search revelation that other officers were nearby simply is not relevant to what the deputy knew at the time of the search. In other words, hindsight does not supplant the knowledge that informed the deputy's decision that exigent circumstances justified the warrantless search at the time of the search.

¶21   Second, Smith argues that the destruction-of-evidence exception does not apply to marijuana possession because possession of marijuana is not a serious crime. *See United States v. Mongold*, 528 F. App'x 944, 950 (10th Cir. 2013) ("[I]f marijuana possession is the only crime for which the officers in this case had probable cause, the exigency exception for destruction of evidence should not apply because marijuana possession is not a serious crime."). But Smith's potential *possession* of some marijuana is not what gave rise to the deputy's suspicions here. Rather, it was the tenant's report that Smith was "growing pot" and was trying to "get rid of" marijuana plants. There's obviously a substantial difference between possessing marijuana for personal use and

growing multiple plants. Here, Smith's mere possession of marijuana did not figure into the deputy's calculus of deciding to proceed with a warrantless search. Rather, his decision was based on the credible information that Smith was trying to rid himself of the contraband—as it turns out, over 100 pounds according to Smith's plea—by moving marijuana plants to the yard. Indeed, the tenant reported that he was "pretty sure" that "a pile of plants" had been moved to the yard. *Cf. Duran*, 2007 UT 23, ¶ 8 ("The aroma of burning marijuana must be accompanied by some evidence that the suspects are disposing of the evidence, as opposed to casually consuming it, before law enforcement officials may be lawfully justified in claiming the benefit of the exigent circumstances exception.").

¶22   In sum, upon hearing from the tenant that Smith had started destroying or moving the marijuana plants after he learned of police involvement, the deputy "might reasonably have believed—based on practical considerations of everyday life—that [Smith] could and would destroy the" plants. *See State v. Maxwell*, 2011 UT 81, ¶ 16, 275 P.3d 220 (cleaned up). Accordingly, the deputy's reasonable inference of the imminent destruction of the plants created an exigent circumstance to justify the warrantless search. Thus, the search did not violate Smith's Fourth Amendment rights.

CONCLUSION

¶23   The totality of the circumstances indicated that Smith was destroying marijuana plants when the deputy arrived. This attempt to rid himself of evidence of the contraband created an exigency that justified the warrantless search. Accordingly, the district court properly denied Smith's motion to suppress.

¶24   Affirmed.

───────────