Hillsborough
No. 89-338

## THE STATE OF NEW HAMPSHIRE

### v.

### ALVIN THOMPSON

March 8, 1990

*John P. Arnold*, attorney general (*Tina L. Nadeau*, attorney, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J.  This appeal centers around the application of the "knock-and-announce" rule in New Hampshire to the rather extraordinary facts of this case. The defendant, Alvin Thompson, was indicted by the Hillsborough County Grand Jury for possession

of stolen property, sale of cocaine, and possession with intent to sell cocaine. After trial, he was convicted only on the third indictment, RSA 318-B:26, and was sentenced by the Trial Judge (*Murphy*, J.) to 6 1/2 to 15 years. The only issue raised on appeal is the constitutionality of the ruling of the Trial Court (*Contas*, J.) denying the defendant's motion to suppress. The defendant claims that evidence seized by the police should have been excluded at trial because the method by which the police entered his apartment violated his rights as guaranteed by part I, article 19 of the New Hampshire Constitution as well as the fourth amendment to the United States Constitution. We hold that the entry into the defendant's apartment by the police was constitutionally permissible and, accordingly, we affirm. Since the peculiar factual situation in this case necessarily leads us to the conclusion we reach, a brief recital of these facts is in order.

On June 4, 1987, agents of the Nashua Police Department executed a search warrant which had been issued by the Nashua District Court authorizing a search of the defendant's second-floor apartment at 70 Tolles Street. In addition to seizing certain contraband that prompted the defendant's arrest on related drug charges, the police also seized a loaded handgun. After being charged with the drug offenses, the defendant was released on bail. The approach used by the police to gain access during this search of the defendant's apartment was described in the testimony of Officer Conley during his direct examination at the hearing on the motion to suppress. After stating that there was one entranceway into the building from the outside, Officer Conley elaborated as follows:

> "Once you're inside, you walk into a stairway. The stairway is extremely steep, and it was made for one person.
>
> You would walk up a very steep stairway, and you would come to another door. This door opened towards you so it made it, again, uncomfortable from a police standpoint to have to get in there quickly."

Thus, as a result of the June 4, 1987 search of the defendant's apartment, the police were placed on notice of some of the dangers they might encounter should they seek to execute additional warrants in the future.

Shortly after the defendant's release on bail, an ongoing undercover drug investigation led the police to believe that the defendant had reestablished himself in the drug business after the brief interlude resulting from his arrest on June 4. A second search

warrant was issued by the Nashua District Court dated August 4, and was executed by the Nashua police between four and five o'clock in the morning of August 5. It should be noted at this point that during the period intervening between the first search and the second, the ongoing investigation revealed substantial changes in the premises affecting the accessibility to the defendant's apartment. Two video cameras had been installed over the outer doorway, and a light had also been installed to illuminate the viewing area. Officers who observed persons entering and exiting the building noticed that before the door was opened, a buzzer sounded, indicating that the door was being electronically unlocked from inside the building. This evidence leads to the logical conclusion that no one could enter the building from the outside without first being observed by the video cameras, whereupon the door was unlocked by the use of the electrical device located inside. It must be remembered that once inside, an entering person would then have to ascend the stairway and cope with the out-swinging door.

In executing the warrant on August 5, the police chose to avoid the customary entrance and instead made a direct entrance into the apartment from ladders placed against the north and south sides of the building. The upstairs windows on both sides of the apartment building were smashed, and the police entered through these openings and seized the cocaine which apparently played a role in the defendant's conviction.

▄▄▄▄ The defendant's constitutional claim is grounded upon the fact that the police entered as they did, without first knocking and announcing their presence on the premises. The "knock-and-announce" rule had its origin in the development of English law and was described in the holding of this court in *State v. Jones*, 127 N.H. 515, 517–18, 503 A.2d 802, 804 (1985), as follows:

> "There has long been a rule at common law that an officer seeking to gain admission to a private dwelling in order to execute a warrant must first make his presence known, give his identity and purpose and ask for admission. If denied admission, the officer may then forcibly gain entrance. The rule was stated in an English case decided in 1604:
>
>> 'In all cases when the King . . . is party, the sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do other execution of the K[ing]'s process, if otherwise he cannot enter. But before

> he breaks it, he ought to signify the cause of his coming, and to make request to open doors ....'
>
> *Semayne's Case*, 5 Coke 91, 77 Eng. Rep. 194, 195 (1604). The rule is commonly referred to as the knock and announce rule. The reasons most often cited for the common law rule are the protection of an individual's right of privacy in his house, and the prevention of violence. *Sabbath v. United States*, 391 U.S. 585, 589 (1968).
>
> The knock and announce rule has been widely adopted in the United States. The Congress of the United States codified the common law rule for federal law enforcement officials in 18 U.S.C. § 3109 (1985). Numerous States have also adopted the common law knock and announce rule either through case law, *e.g., People v. Lujan*, 174 Colo. 554, 559, 484 P.2d 1238, 1241 (1971); *State v. Johnson*, 102 R.I. 344, 351-52, 230 A.2d 831, 835 (1967); or by statute, *e.g.*, DEERING'S CAL. PENAL CODE, § 1531 (1982); MICH. COMP. LAWS ANN. § 764.21 (1982)."

Common sense is enough to tell us that if the government's business can be conducted without resorting to violence, it must be so conducted. To permit otherwise is to invite confrontation, strife, and violence which in the long run will dilute the protections otherwise guaranteed in a peaceful and ordered society. In *State v. Jones supra*, this court adopted the knock-and-announce protections as a matter of State law. *Id.* at 520, 503 A.2d at 805. The rule, however, is not without exceptions. One exception is where the circumstances indicate that the evidence to be seized pursuant to a warrant is likely to be destroyed, hence, creating an exigency. *Ker v. California*, 374 U.S. 23, 39-40 (1963); *see also State v. Jones, supra* at 520, 503 A.2d at 806. Another exception exists where the police are at physical risk in announcing their presence on the premises. *United States v. Kane*, 637 F.2d 974, 978 (3d Cir. 1981). We now focus our inquiry on the former of these two exceptions, and not on the latter.

The facts in this case strongly support the conduct resorted to by the police. Between the time of the defendant's first arrest and the execution of the second warrant, an elaborate surveillance system had been installed that enabled the occupant of the apartment to view, at any point day or night, the persons seeking entry. The likelihood of the destruction of evidence under such circumstances is compelling. While we recognize that the protections provided by part I, article 19 of the New Hampshire

734

Constitution, as well as those of the fourth amendment, are never in sharper focus than when viewed in the protection of one's dwelling, the facts of the case at hand lead us to hold that the exigency exception was present and the appeal must fail.

*Affirmed.*

All concurred.