THE STATE OF NEW HAMPSHIRE

v.

GENEROSO KENNEDY MATOS

March 25, 1992

*John P. Arnold,* attorney general (*Tina L. Nadeau,* attorney, on the brief and orally), for the State.

*W. Kirk Abbott, Jr.,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J.   The State appeals from a ruling of the Superior Court (*Hampsey,* J.) granting the defendant's motion to suppress on the grounds that police officers failed to comply with the knock and announce rule. We reverse.

The facts are essentially undisputed. In February 1990, the Nashua police began a narcotics investigation involving Matthew Couris. An undercover detective made three purchases of cocaine from Couris at his apartment. Each time, Couris left his apartment and returned "a few minutes later" with the cocaine in several "street packages," each weighing approximately one-sixteenth of an ounce.

In connection with these "controlled buys" and surveillance of Couris, the police determined that Couris had obtained the narcotics for each sale from apartment 55-A Temple Place. A search warrant, the validity of which is not disputed, was obtained for apartment 55-A.

Before executing the warrant, the police contacted the landlord of the Temple Place apartment building. The landlord supplied floor plans to the apartment, which indicated the type and location of all

plumbing fixtures and where the entrances were located, as well as keys to all the doors.

Fearing that the locks may have been changed and that use of the old keys would only serve to warn the tenants, so as to enable them to destroy any evidence, the police decided against using the keys the landlord had given them. Instead, the police decided to make an unannounced forced entry, utilizing a battering ram to "pop" the lock on the door.

On March 15, 1990, at approximately 7:00 p.m., the police approached the building so as to enter through the rear door, which was the entrance closest to the bathroom. They chose this entrance because, based on their experience, drug dealers often attempt to dispose of their contraband by flushing it down a sink or toilet. The police forced the door open, rushed into the apartment yelling "police," and ordered the two occupants, the defendant and his girlfriend, onto the floor. No resistance was offered. No announcement was made prior to the entrance into the apartment.

■ The knock and announce rule requires police officers who execute search warrants at places of residence to knock, announce their identity and purpose, and wait a sufficient period of time before effecting a forcible entry. *State v. Jones*, 127 N.H. 515, 517–18, 503 A.2d 802, 805 (1985). This common law rule was recognized by this court in an effort to "protect citizens' rights to privacy in their homes and prevent unnecessary violence which could result from unannounced entries." *Id.* at 518, 503 A.2d at 805.

While the court has traditionally given broad application to this rule, there are several well-recognized exceptions, including exigent circumstances, flight, and safety. *State v. Thompson*, 132 N.H. 730, 733, 571 A.2d 266, 268 (1990); *Jones*, 127 N.H. at 520, 503 A.2d at 806. In this case, the only exception asserted by the State is the existence of exigent circumstances; namely, the potential destruction of evidence.

Other jurisdictions have dealt with the question of exigent circumstances in the context of drug-related searches. Many have held that a search for narcotics alone does not equate to exigent circumstances, and, in the absence of factually based exigent circumstances, the police must knock and announce their presence and purpose. *State v. Bates*, 120 Ariz. 561, 563, 587 P.2d 747, 749 (1978); *People v. Neer*, 223 Cal. Rptr. 555, 557–58 (1986); *State v. Anonymous*, 308 A.2d 251, 252 (Conn. Super. 1973); *State v. Carufel*, 112 R.I. 664, 670, 314 A.2d 144, 148 (1974). Others have adopted a bright-

line rule that since drugs, by their very nature, are easily destroyed, unannounced searches for them are always constitutional. *Henson v. State,* 236 Md. 518, 523–24, 204 A.2d 516, 520 (1964); *People v. De-Lago,* 16 N.Y.2d 289, 292, 213 N.E.2d 659, 661 (1965), *cert. denied,* 383 U.S. 963 (1966).

While there is merit to both approaches, we believe the better rule to be an intermediate approach like that set forth in the Florida case of *Armenteros v. State,* 554 So.2d 574 (Fla. App. 3d Dist. 1989). In *Armenteros,* a police SWAT team broke down the defendant's front door without first announcing their presence or intentions in order to prevent the destruction of evidence. The only basis the police had for believing that evidence might be destroyed was the fact that the undercover officer "had purchased a small amount of cocaine in the defendants' home," and the home contained "normal residential plumbing." *Id.* at 575. In its ruling, the Florida Appellate Court

> "noted that cocaine, when purchased in 'user' quantities, is not found in barrels, bushels or bales. Experience tells police officers that cocaine is marketed to the consumer trade in quantities which are readily disposable in sinks or toilets. Experience also teaches that attempts are made to destroy evidence in a great majority of drug-related arrests."

*Id.*

In the case before us, the cocaine was being packaged and sold to the police in "street quantities." The runner, Couris, received the drugs he sold to the undercover officer from 55-A Temple Place. Since Couris was never in the apartment more than a few minutes while the undercover officer waited, it was reasonable for the police to conclude that the drugs were stored in the apartment in "street quantity" packages. This size package could be easily destroyed in normal household plumbing fixtures. Furthermore, although unaware of the exact location in the apartment where the drugs were being stored, the police could reasonably presume that the drugs would be kept in a place that would allow for their hasty disposal.

■ Accordingly, we conclude that exigent circumstances exist in cases where an easily disposable illegal narcotic is being packaged in small quantities and is housed in a residential dwelling with traditional plumbing. Thus, under these circumstances, the police need not knock and announce their intentions prior to entering the dwelling pursuant to a valid warrant. Based on the facts of the case before us, we find exigent circumstances existed, and, therefore, the police

were entitled to enter the premises without first knocking and announcing themselves.

*Reversed.*

BATCHELDER, J., dissented; the others concurred.

BATCHELDER, J., dissenting: The knock and announce rule is deeply rooted in our jurisprudence, *see Miller v. United States*, 357 U.S. 301, 306–08 (1958); *State v. Smith*, 1 N.H. 346 (1818). It protects privacy interests and provides insurance against violent reactions, *Sabbath v. United States*, 391 U.S. 585, 589 (1968); *State v. Thompson*, 132 N.H. 730, 733, 571 A.2d 266, 268 (1990). Because of the importance of these interests, I would require more than a bright-line rule that in all cases where the object of the search is a readily disposable quantity of contraband a forced entry without more may be made. I would require a showing of exigency on a case-by-case basis. I respectfully dissent.