Grafton
No. 2007-107

THE STATE OF NEW HAMPSHIRE

v.

LUIS A. RODRIGUEZ

Argued: January 17, 2008
Opinion Issued: April 8, 2008

*Kelly A. Ayotte*, attorney general (*Thomas E. Bocian*, attorney, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

BRODERICK, C.J. The defendant, Luis A. Rodriguez, appeals from an order of the Superior Court (*Vaughan*, J.) denying his motion to suppress evidence of his possession of controlled drugs, discovered as a result of a warrantless entry by the police into his hotel room. We affirm.

I

The trial court found, or the record supports, the following facts. On the evening of March 1, 2006, Sergeant Lecuyer and Corporal Roberts of the Lebanon Police Department were investigating a recent theft at the Airport Economy Inn. After questioning individuals on the hotel's fourth floor, where the theft occurred, the police officers descended a stairway to the third floor. On entering the hallway there, they smelled the odor of "burning marijuana." After walking down the hallway, they conclusively determined that the odor was strongest immediately outside Room 308.

Hearing what sounded like a small party and the voices of several people talking inside the room, the officers positioned themselves on the right and left sides of the door, both to protect themselves and to avoid being seen through the door's peephole when someone responded to a knock. Sergeant Lecuyer then knocked on the door several times and as the voices inside the room were lowered, the officers heard one person say, "Check out there for the police." When they received no response from inside the room, the officers continued to knock on the door, identified themselves as members of the Lebanon Police Department, and ordered that the door be opened immediately. The officers testified that they could hear someone "scurrying" or running around inside the room. After repeated knocking, the police announced that if someone did not open the door, it would be opened by force.

Two to two and one-half minutes after the police first knocked, the defendant opened the door approximately six to ten inches. Both officers testified that they recognized him from previous drug arrests and investigations, and that they observed a haze of marijuana smoke inside the room, which wafted into the hallway. The officers entered the room, and ordered the defendant and two other individuals to sit on the bed with their hands visible. After securing the room, where they observed drug paraphernalia and other contraband in plain view, the officers obtained a search warrant. Upon execution of the warrant, they found substantial drug and drug-related material.

Prior to trial, the defendant unsuccessfully moved to suppress the evidence seized, claiming it was derived from an illegal warrantless entry into the hotel room. In denying the motion, the trial court stated:

> Looking at the totality of the circumstances, the officers acted reasonably prior to their entry into the hotel room. The officers smelled burning marijuana coming from the room and heard a small party inside. It is reasonable, considering the fact that the evidence of the crime was, at that moment, being destroyed, for

the officers to knock on the door and enter without a warrant. The destruction of the evidence was the exigency, not the knocking on the door.

After a bench trial, the defendant was convicted of the felonies of possession of heroin, cocaine, and marijuana with intent to sell. *See* RSA 318-B:2, :26 (2004). This appeal followed.

## II

The defendant argues that the trial court erred in denying his motion to suppress when it: (1) ruled that the odor of burning marijuana created exigent circumstances, allowing the police to enter his hotel room without a warrant; and (2) rejected his argument that whatever exigency may have existed arose from the police officers' decision to knock on the door and announce their presence, rather than to watch the room while they secured a search warrant. Consequently, he contends that the warrantless entry violated his rights as guaranteed by Part I, Article 19 of the New Hampshire Constitution and the Fourth Amendment to the United States Constitution. We first address his claim under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), and cite federal opinions for guidance only, *id.* at 232-33.

When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous. *State v. Stern*, 150 N.H. 705, 708 (2004). Our review of the trial court's legal conclusions, however, is *de novo. Id.*

██ ██ Under Part I, Article 19 of our State Constitution, warrantless entries are *per se* unreasonable and illegal unless they fall within the narrow confines of a judicially crafted exception to the warrant requirement. *State v. Pseudae*, 154 N.H. 196, 199 (2006). The State bears the burden of proving by a preponderance of the evidence that such an entry falls within one of these exceptions. *See Stern*, 150 N.H. at 708. At issue here is the "exigent circumstances" exception, which has two elements: probable cause and exigent circumstances. *See id.* As the defendant concedes that the police in this case had probable cause "to believe that people inside the hotel room possessed a user quantity of marijuana," we need not further address that element. We turn our attention to whether exigent circumstances existed.

██ "Exigent circumstances exist where the police face a compelling need for immediate official action," *Pseudae*, 154 N.H. at 200, and a risk that "the delay caused by obtaining a search warrant would create a substantial threat of imminent danger to life or public safety or *likelihood that*

*evidence will be destroyed," Stern,* 150 N.H. at 709 (emphasis added). Whether exigent circumstances exist is judged by the totality of the circumstances, and is largely a question of fact for the trial court. *Id.* We will not disturb the trial court's finding of exigent circumstances unless it is clearly erroneous. *Id.*

## III

We have not previously decided if the odor of burning marijuana is sufficient to establish exigent circumstances, and we note three things at the outset of our analysis. First, because we review the trial court's finding within a context of the totality of the circumstances, we need not decide here if such an odor establishes exigent circumstances *per se.*

Second, this case concerns the odor of "burning" marijuana, in contrast to "burned" marijuana. Both police officers testified regarding their experience in determining the "more potent, stronger smell" of burning marijuana, as opposed to the smell of "stale or older burned marijuana," and that they smelled burning marijuana on the night in question. *See, e.g., People v. Aarness,* 150 P.3d 1271, 1278 (Colo. 2006) (smell of previously burned marijuana did not present exigent circumstances justifying police entry where apartment occupants already outside except for one other person asleep upstairs; "the smell of burned marijuana did not indicate any risk that evidence was being destroyed"), *cert. denied,* 128 S. Ct. 54 (2007).

Third, in arguing that the totality of the circumstances in this case augurs against a finding of exigency, the defendant equates the expectation of privacy of the occupant of a hotel room with that of persons in their own homes. He contends that we have held the same, citing *State v. Watson,* 151 N.H. 537 (2004); the State does not dispute his contention. For the purposes of this appeal only, we assume, without deciding, that the parties are correct. *But see id.* at 542 (Broderick, C.J., concurring specially) (precise nature of defendant's privacy interest in a hotel or motel room not at issue within totality of the circumstances analysis and remains an undecided issue in this state).

Both the defendant and the State cite *State v. Hess,* 680 N.W.2d 314 (S.D. 2004), as detailing cases in which courts have reached different results regarding whether the odor of burning marijuana provides exigent circumstances justifying a warrantless entry, *see Hess,* 680 N.W.2d at 325 (citing cases). More recent cases have added to the list of jurisdictions reaching varying results on this issue. For example, in *Rideout v. State,* 122 P.3d 201 (Wyo. 2005), the Supreme Court of Wyoming concluded that sufficient exigent circumstances existed to justify police officers' warrantless entry into a private residence where the officers detected the odor of burning marijuana emanating from inside the residence, and the officers' presence

was noted by the occupants. "Any evidence could have easily been destroyed before the [officers] would have had an opportunity to obtain a search warrant." *Rideout*, 122 P.3d at 208. In *State v. Duran*, 156 P.3d 795 (Utah 2007), however, the Supreme Court of Utah found that the detectable odor of burning marijuana is inadequate, standing alone, to support a reasonable belief by police officers that the destruction of evidence is "sufficiently certain." *Duran*, 156 P.3d at 797. Instead, the court stated: "The aroma of burning marijuana must be accompanied by some evidence that the suspects are disposing of the evidence, as opposed to casually consuming it . . . ." *Id.*

Both the defendant and the State recognize that those jurisdictions cited in *Hess* as holding that "the smell of burning marijuana does not evince a sufficiently grave offense to justify entering a residence without a warrant . . . [have done so in reliance] on the distinction between minor and serious offenses made by the United States Supreme Court in *Welsh v. Wisconsin*, 466 U.S. 740 (1984)," *Hess*, 680 N.W.2d at 325. Both parties also acknowledge that the Supreme Court later clarified *Welsh* with its decision in *Illinois v. McArthur*, 531 U.S. 326 (2001).

In *Welsh*, the Supreme Court stated:

> Our hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate when the underlying offense for which there is probable cause to arrest is relatively minor. Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.

*Welsh*, 466 U.S. at 750 (citation omitted). *Welsh* concerned the warrantless entry of a home "in order to prevent the loss of evidence [of the defendant's blood alcohol level concerning] the nonjailable traffic offense of driving while intoxicated." *McArthur*, 531 U.S. at 335 (quotation omitted).

In *McArthur*, police officers, with probable cause to believe that the defendant had hidden marijuana in his home, prevented him from entering the home for approximately two hours while they obtained a search warrant. *Id.* at 328. Concluding that the officers' actions were reasonable and did not violate the Fourth Amendment, the Supreme Court found "significant distinctions" between the evidence of "nonjailable" offenses at

issue in *Welsh*, with the evidence of "jailable" crimes at issue in the case, and held that "the need to preserve evidence of a 'jailable' offense was sufficiently urgent or pressing to justify the restriction upon entry that the police imposed." *McArthur*, 531 U.S. at 336. In addition, the Court noted that:

> We have found no case in which this Court has held unlawful a temporary seizure that was supported by probable cause and was designed to prevent the loss of evidence while the police diligently obtained a warrant in a reasonable period of time.

*Id.* at 334.

We need not decide here if our exigent circumstances analysis requires a strict differentiation between jailable and nonjailable offenses. We agree with the State, however, that when examining the totality of circumstances behind a finding of exigent circumstances, reliance upon *Welsh* appears to be out of place in light of *McArthur*. Further, we tend to agree with those jurisdictions that see in *McArthur* at least the intimation "that if any bright line exists for warrantless entries into the home, it should be drawn between jailable and nonjailable offenses rather than between felonies and misdemeanors," *Cherry v. Com.*, 605 S.E.2d 297, 307 (Va. Ct. App. 2004); *see also Rideout*, 122 P.3d at 210 (citing cases). The possession of marijuana, no matter the quantity, is a jailable offense in this state. *See* RSA 318-B:26, II(d) (possession of marijuana is a class A misdemeanor); RSA 651:2, II(c) (2007) (class A misdemeanor punishable by imprisonment not to exceed one year).

We are also persuaded by the reasoning of those jurisdictions finding that the odor of burning marijuana "is itself proof that evidence of criminal conduct is being destroyed," *Hess*, 680 N.W.2d at 325 (citing cases); *see also State v. Hughes*, 607 N.W.2d 621, 628 (Wis.) ("The strong odor of marijuana that hit the officers as the door to the defendant's apartment was opened gave rise to a reasonable belief that the drug—the evidence—was likely being consumed by the occupants and consequently destroyed. . . . Marijuana and other drugs are highly destructible."), *cert. denied*, 531 U.S. 856 (2000). We believe this reasoning is in closest consonance with our related case law.

For example, in *Stern*, 150 N.H. at 709-10, we affirmed the defendant's convictions for negligent homicide and aggravated driving while intoxicated. We concluded that the trial court had not erred in its finding that exigent circumstances justified the warrantless taking of the defendant's blood sample where there was an inherent delay in obtaining a search warrant at night, *id.* at 710, and we recognized that "alcohol is metabolized

or chemically changed by blood so as to render blood alcohol content diminished or undetectable with the passage of time," *id.* at 709 (quotation omitted); *see also State v. Steimel*, 155 N.H. 141, 148 (2007) (no distinction between the metabolization of alcohol and controlled drugs). In the instant case, we believe that the police officers' continued detection of the odor of burning marijuana coming from the defendant's hotel room, as they waited outside in the hallway, gave rise to a reasonable belief that the evidence continued to be consumed, and, consequently, destroyed by the room's occupants.

Further, we have held as a matter of law that "exigent circumstances exist in cases where an easily disposable illegal narcotic is being packaged in small quantities and is housed in a residential dwelling with traditional plumbing." *State v. Matos*, 135 N.H. 410, 412 (1992) (reversing trial court's suppression of evidence obtained when police executed valid search warrant without conforming to "knock and announce" rule). While *Matos* involved "street quantity packages" of cocaine, *id.*, the parallels with the instant case are inescapable. Officers Lecuyer and Roberts smelled the odor of burning marijuana emanating from the defendant's hotel room, giving rise to a reasonable belief that an easily disposable illegal drug was being consumed by the occupants and consequently destroyed in the smoking process. The officers testified that they heard the voices of several people talking in the room and what sounded like a small party. The officers had no reason at that point to believe that the marijuana being burned was in a quantity any greater than that for personal use of the room's occupants. Sergeant Lecuyer testified that he was familiar with the Airport Economy Inn and that each room in the hotel had "indoor plumbing, a toilet facility, sink, running water." *See State v. Santana*, 133 N.H. 798, 804 (1991) (agreeing with trial court that "[w]hile the Fourth Amendment and Part I, Article 19 are not relaxed for drug investigations, the ease of destruction of that evidence sets the framework for the determination of exigent circumstances" (quotation omitted)).

■ In sum, based upon the seriousness of the offense, and that the delay caused by obtaining a search warrant would create the likelihood that evidence of marijuana possession will be destroyed by burning, we hold that the odor of burning marijuana may, within a totality of the circumstances analysis, give rise to exigent circumstances justifying a warrantless entry by the police.

IV

■■ Our holding, above, however, is not, by itself, dispositive in this case. No single factor controls our inquiry into whether exigent circumstances exist; instead, our review of the totality of the circumstances

"includes an examination of the overall reasonableness of the police officers' behavior prior to the entry," *id.* (quotations omitted). Further, the primary focus of our inquiry is "how the exigency came about." *Id.* at 805. Clearly, the police may not create the exigency in order to justify their warrantless entry, "yet the boundary between an exigency which naturally arises and an exigency which is created is unclear." *Id.* We have previously pointed to two factors as guideposts in that review. First:

> ■ [T]he presence or absence of an ample opportunity for getting a search warrant is pertinent to our inquiry. Implicit in this consideration is an acknowledgement that an officer does not have to obtain a search warrant at the point probable cause is established. Likewise, an officer's failure to avail himself of an early opportunity to obtain a warrant will not automatically preclude him from relying on exigent circumstances.

*Id.* (quotation and citations omitted). Second:

> ■ When reviewing the totality of the circumstances, we consider the degree to which the exigency relied upon by the State was foreseeable. We stress, however, that the extent to which exigency was foreseeable at the time the decision was made to forego or postpone obtaining a warrant does not, by itself, control the legality of a subsequent warrantless search triggered by that exigency.

*Id.* at 806 (quotation and citation omitted).

Here, the police officers went to the Airport Economy Inn on the evening of March 1, 2006, to investigate a theft that had occurred on the hotel's fourth floor approximately one week earlier. As none of the individuals on the fourth floor questioned by the officers had any valuable information for the theft investigation, the police officers descended a stairway to the third floor to continue their investigation. On entering the hallway of the third floor, they smelled the odor of burning marijuana. After walking down the hallway, the police officers concluded that the odor was coming from the defendant's room, and heard what sounded like a small party and the voices of several people talking in the room. While they were standing outside the door of the defendant's room, a hotel guest walked by and told the officers that "he knew why [they] were there," and that the odor of the burning marijuana was coming from that room. Although both officers knew the defendant from previous drug arrests and investigations, Sergeant Lecuyer testified that prior to knocking on the hotel room door, neither officer had made any inquiry into the identity of the room's occupants. Further, the

record is devoid of any evidence that either officer had any knowledge that the defendant was one of the room's occupants prior to his opening the door.

Accordingly, we see nothing to establish either that: (1) the police officers' behavior prior to the entry was unreasonable; (2) there was ample opportunity for the police to have obtained a search warrant prior to encountering the situation presented when they entered the third floor or ascertained the room from which the odor of burning marijuana emanated; or (3) the situation encountered by the officers when outside the defendant's room was foreseeable prior to their arrival at the hotel. *See Mendez v. People*, 986 P.2d 275, 282 (Colo. 1999) (exigent circumstances justified warrantless search where police officer, on motel premises to investigate unrelated complaint, inadvertently encountered odor of burning marijuana coming from motel room; exigencies arising in case were not foreseeable and a warrant could not have readily been obtained where there was no evidence that police officer "made a deliberate decision to go to the motel in order to gather evidence of drug use"), *cert. denied*, 529 U.S. 1070 (2000); *cf. Santana*, 133 N.H. at 807 (police may not rely on an "expected exigency" to justify warrantless entry into defendant's apartment where "police, with ample probable cause, time to obtain a warrant, and time for reflection, chose to pursue a course of action which they knew at the outset [would] present a situation requiring an emergency entrance into a person's home").

## V

█ Given our standard of review, and the totality of the circumstances presented in this case, we cannot say that the trial court's finding of exigent circumstances was clearly erroneous. The police officers were at the hotel to conduct a non-related theft investigation; their presence was not a pretext for a drug investigation. While investigating the theft, the officers inadvertently smelled the odor of burning marijuana emanating from a hotel room. It sounded like the room was occupied by several people having a small party, giving rise to a reasonable belief that an easily disposable illegal drug, the possession of which is a jailable offense in this state, was being consumed by the occupants and consequently destroyed in the smoking process. The officers had no reason to believe that the marijuana being burned was present in quantities any greater than that for personal use, and the officers were aware that each room in the hotel had a toilet and sink. Prior to knocking on the hotel room door, neither officer had made any inquiry into the identity of the room's occupants, nor were the officers aware that the defendant, who was recognized by both of them as a known drug dealer when the door was opened, was one of the room's occupants.

The officers' behavior prior to the entry was not unreasonable; there was not an ample opportunity to obtain a search warrant prior to encountering the situation presented; and the situation encountered by the officers was not foreseeable prior to their arrival at the hotel. In sum, given the need for immediate action and the risk that the delay caused by obtaining a search warrant would create the likelihood that the marijuana evidence would be destroyed in this case, we find no error in the trial court's denial of the defendant's motion to suppress. *See, e.g., Johnson v. United States*, 333 U.S. 10, 14 (1948) ("Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing.").

Having decided that the trial court's finding of exigent circumstances prior to the police officers knocking on the defendant's hotel room door was not clearly erroneous, we need not address the defendant's argument that such exigent circumstances were created only after the police officers knocked on the door and announced their presence. *But cf., e.g., State v. Jones*, 127 N.H. 515, 518 (1985) ("New Hampshire police officers, before forcibly entering a dwelling, should knock, identify themselves and their purpose, and demand admittance."); *United States v. Bayko*, 774 F.2d 22, 23 (1st Cir. 1985) ("It is not improper for a police officer to call at a particular house and seek admission for the purpose of investigating a complaint or conducting other official business." (quotation omitted)).

Because our State Constitution provides at least as much protection as does the Federal Constitution under these circumstances, *see State v. Seavey*, 147 N.H. 304, 306 (2001); *McArthur*, 531 U.S. at 330-31, we reach the same result under the Federal Constitution.

*Affirmed.*

DALIANIS and GALWAY, JJ., concurred; HICKS, J., dissented.

HICKS, J., dissenting. Because I believe that the trial court misapplied the exigent circumstances test, I respectfully dissent.

When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings unless they are unsupported by the record or are clearly erroneous. *State v. Pseudae*, 154 N.H. 196, 199 (2006). The trial court's legal conclusions are subject to *de novo* review. *Id.* Here, the trial court's factual findings lack support in the record. Accordingly, I would reverse its conclusions.

As an initial matter, I note that the majority, for purposes of this appeal, assumed, without deciding, that the expectation of privacy of the occupant of a hotel room is equivalent to that of persons in their own homes. *Cf. State v. Watson*, 151 N.H. 537, 540 (2004) (agreeing with the defendant within a voluntariness of consent totality analysis that "the privacy interest in a

hotel room is comparable to that of the home"). Presumably then, the majority would allow warrantless entry into a home based upon the facts before us. Given that "[t]he search of a home is subject to a particularly stringent warrant requirement because the occupant has a high expectation of privacy," *Pseudae*, 154 N.H. at 199, such a precedent is unsettling.

Under Part I, Article 19, warrantless entries are *per se* unreasonable and illegal unless they fall within a clearly defined exception to the warrant requirement. *See id.* The State bears the burden of proving by a preponderance of the evidence that such an entry falls within an exception. *State v. Stern*, 150 N.H. 705, 708 (2004); *see also Welsh v. Wisconsin*, 466 U.S. 740, 749-50 (1984) (noting that "the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches"). My review of the record shows that the State failed to meet that burden. To me, a failure to overturn the trial court effectively shifts the burden of proof to the defendant.

"Exigent circumstances exist where the police face a *compelling need for immediate official action* and a risk that the delay inherent in obtaining a warrant will present a substantial threat of imminent danger to life or public safety or create a *likelihood that evidence will be destroyed.*" *Pseudae*, 154 N.H. at 200 (emphases added). Whether exigent circumstances exist is judged by a totality of the circumstances. *Stern*, 150 N.H. at 709. This totality review "includes an examination of the overall reasonableness of the police officers' behavior prior to the entry," but no single factor controls the inquiry. *State v. Santana*, 133 N.H. 798, 804 (1991) (quotations omitted). Thus, although the trial court relied heavily upon its view of the reasonableness of the officers' conduct, that factor alone is not conclusive of exigency.

The requirement of a compelling need for immediate official action underscores the limited nature of the exigency exception. If applied too liberally, the exigency exception readily swallows the rule that warrantless entries are *per se* unreasonable. *See State v. Ricci*, 144 N.H. 241, 244 (1999). It is instead the Fourth Amendment (and Part I, Article 19 of the New Hampshire Constitution) that "should receive a liberal construction, so as to prevent stealthy encroachment upon or gradual depreciation of the rights secured by [it], by imperceptible practice of courts or by well-intentioned but mistakenly over-zealous executive officers." *Gouled v. United States*, 255 U.S. 298, 304 (1921) (quotations omitted), *overruled in part on other grounds by Warden v. Hayden*, 387 U.S. 294 (1967).

To determine whether the police in this case were presented with a compelling need for immediate action based upon a likelihood of evidence destruction, an examination of the specific facts is necessary. *See Santana,*

133 N.H. at 803-04. Helpful in this determination are five factors articulated by the United States Court of Appeals for the Third Circuit:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.

*United States v. Rubin*, 474 F.2d 262, 268-69 (3d Cir.) (citations and quotation omitted), *cert. denied*, 414 U.S. 833 (1973); *see also* 2 W. LAFAVE, CRIMINAL PROCEDURE § 3.6(e), at 255-56 (3d ed. 2007) (deeming the *Rubin* factors the "most careful treatment of this point").

Here, the police initially perceived the smell of burning marijuana. Corporal Roberts testified that the officers decided to knock because they were "hoping for cooperation from the individuals on the inside." After they knocked on the door they heard "scurrying," and at one point, the room's occupants fell quiet and expressed concern for police presence. These facts "do not rise to the level of urgency demonstrated in previous cases where we have upheld warrantless emergency entries into private dwellings." *Pseudae*, 154 N.H. at 201 (distinguishing cases where a gunshot was heard from within a home and where the police believed a sniper was shooting from within). Similarly, nothing in the record suggests that it was impracticable or even inconvenient for the officers to obtain a warrant without unreasonable delay prior to entry. To the contrary, the officers were in fact able to obtain a warrant with apparent ease after they entered the room. The State does not argue otherwise. Thus, the first *Rubin* factor is not indicative of exigency.

As for the second factor, neither officer testified that they entered the room before obtaining a warrant because they were concerned with evidence destruction or removal. Rather, when the defendant answered the door, the officers were hit with a "visible haze of marijuana smoke," and made a decision to "seize th[e] room pending application of a search warrant." Any suggestion upon these facts that evidence would be destroyed is speculative at best—hardly indicative of a compelling need for official action. *See State v. Morse*, 125 N.H. 403, 409 (1984) ("Mere speculation about the possibility of destruction of evidence is insufficient to support a claim of exigency."). Without some evidence of actual destruction, a warrantless search cannot be sustained.

In addition, there is nothing in the record suggesting that the officers were ever in any danger, and the possessors of the contraband were aware that the police were on their trail only after the officers knocked. Only the fifth *Rubin* factor is satisfied, but this factor is satisfied in any case involving the possession of contraband and seems only to acknowledge the self-evident truth that most people seek to avoid criminal penalties. "That contraband is easily removed, hidden, or destroyed is not, in and of itself, an exigent circumstance." *State v. Dorson*, 615 P.2d 740, 746 (Haw. 1980).

If there were any real possibility of evidence destruction in this case, it occurred only after the police made their presence known, as opposed to those cases where the police "were confronted with a situation in which their presence was known to the occupants." *Rideout v. State*, 122 P.3d 201, 208 (Wyo. 2005); *see also Santana*, 133 N.H. at 805 ("The police may not create exigency in order to justify their warrantless entry."). The potential for flushing drugs down the toilet, for example, is likely only after the possessors are concerned with police surveillance. *Cf. State v. Duran*, 156 P.3d 795, 798 (Utah 2007) ("It is . . . unlikely that a person in possession of contraband, like marijuana, would be so consumed by paranoia as to dispose of the contraband . . . having no reason to suspect that law enforcement might be alerted to the illegal activities.").

Some jurisdictions hold that the odor of burning marijuana "is itself proof that evidence of criminal conduct is being destroyed." *State v. Hess*, 680 N.W.2d 314, 325 (S.D. 2004) (citing cases). Others have refused to find exigent circumstances based solely upon the odor of marijuana smoke. *See, e.g., Dorson*, 615 P.2d at 746 ("[W]hile the smell of marijuana may establish probable cause, it is not an exigent circumstance that will justify a warrantless entry."); *People v. Cohen*, 496 N.E.2d 1231, 1235 (Ill. App. Ct. 1986) ("[H]aving probable cause from the odor of burning cannabis will not alone justify an officer to enter and search a private residence."), *appeal denied*, 505 N.E.2d 356 (Ill. 1987); *State v. Schur*, 538 P.2d 689, 694 (Kan. 1975) ("Absent a showing of circumstances indicating the likely destruction of evidence, other than defendant's refusal of entry, the observation of a yellow, rolled cigarette in plain view and the detection of an odor similar to burning marijuana would not authorize a search of the premises without a valid warrant or consent."); *Howe v. State*, 916 P.2d 153, 161 (Nev. 1996) (holding that exigent circumstances did not support warrantless entry based upon the smell of burning marijuana); *Duran*, 156 P.3d at 797 ("The aroma of burning marijuana must be accompanied by some evidence that the suspects are disposing of the evidence, as opposed to casually consuming it," before the exigency exception applies.). The majority correctly points out that several jurisdictions holding that the smell of burning marijuana itself does not constitute exigency rely upon a distinction

between minor and serious offenses. However, none of the jurisdictions cited above based their holdings upon such a distinction.

Moreover, in one of the first cases to contemplate an exigent circumstances exception to the warrant requirement, the United States Supreme Court declined to apply the exception to facts similar to those here. *Johnson v. United States*, 333 U.S. 10, 15 (1948). While acknowledging that odors alone could provide probable cause to justify issuance of a search warrant, the Court concluded that the odor of burning opium itself did not justify the warrantless search of a hotel room. *Id.* at 13, 15. The Court noted that there was no flight risk, the search was of permanent premises rather than a movable vehicle, and "[n]o evidence or contraband was threatened with removal or destruction." *Id.* at 15.

While the majority expressly disclaims deciding that the odor of burning marijuana alone establishes exigent circumstances *per se*, it also affirms the trial court's finding of exigent circumstances prior to the police officers knocking on the defendant's hotel room door. Given that the only evidence at that point was the odor of burning marijuana, it is difficult to square this disclaimer with the facts of the case. Regardless, to me, the majority's decision is a departure from our established warrantless entry jurisprudence.

This case exemplifies why the Utah Supreme Court declined "to grant the aroma of burning marijuana a place on an exclusive, limited roster of exceptions" to the warrant requirement and held that such aroma "must be accompanied by some evidence that the suspects are disposing of the evidence, as opposed to casually consuming it," before the exigency exception may apply. *Duran*, 156 P.3d at 797. As the Utah Supreme Court reasoned:

> [T]he costs that would accompany a merger of consumption of contraband and destruction of evidence—i.e., an increase in questionable warrantless searches, a corresponding decrease in personal privacy, a decreased incentive for law enforcement to seek a warrant before conducting a search, and a further erosion of Fourth Amendment protections—outweigh the benefits accruing to the state in more efficient law enforcement.

*Id.* at 798-99.

Without making that explicit holding here, I would simply hold that the totality of the circumstances in this case did not present a compelling need for immediate official action. The State offers no substantive evidence justifying the failure to obtain a warrant, and convenience alone does not justify this failure. *See Morse*, 125 N.H. at 409 ("[T]hat police operations would be more efficient if the warrant requirement were ignored" is

insufficient to prove exigency.). The officers had time to obtain a warrant, they were not confronted with reasonably certain evidence destruction, neither an officer nor anyone else was in danger, and the room's occupants were not aware of the officers' presence until the officers knocked. If there were any circumstances approaching exigency, they were created by the officers' decision to make their presence known rather than secure a search warrant. "If the officers in this case were excused from the constitutional duty of presenting their evidence to a magistrate, it is difficult to think of a case in which it should be required." *Johnson*, 333 U.S. at 15. Therefore, I respectfully dissent and would reverse the trial court's denial of the defendant's motion to suppress.