In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 13-2131

JAMES WHITE,

*Plaintiff-Appellee,*

*v.*

TAMMIE STANLEY and THOMAS MORRISON,

*Defendants-Appellants.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:11-cv-50057 — **Frederick J. Kapala**, *Judge.*

———————————

ARGUED FEBRUARY 12, 2014 — DECIDED MARCH 11, 2014

———————————

Before POSNER, FLAUM, and HAMILTON, *Circuit Judges.*

FLAUM, *Circuit Judge.* James White was arrested in his home in March of 2010 for obstructing a peace officer. Two deputy sheriffs came to White's house without a warrant looking for his live-in girlfriend, Nancy Hille, on suspicion that she had stolen a license-plate registration sticker. White refused to let them in and tried to slam the door, at which point one of the deputies jammed her foot in the door and the deputies entered the house. The deputies took White to

the ground. The deputies claim that this entry was justified because they smelled burning marijuana when they were outside the door. White sued for false arrest, and the district court found that no exigency existed. It also denied the deputies' qualified immunity defense, finding it waived. The deputies took an interlocutory appeal, and we reverse.

## I. Background

Winnebago County Sheriff's Deputy Tammie Stanley was on patrol during the early morning hours of March 9, 2010, when she pulled over Nancy Hille for an expired vehicle registration sticker. She ran Hille's license plates, and discovered that the Secretary of State's record of the plate's expiration date was different than the date on the expired sticker. Stanley asked dispatch to contact the Secretary of State's office. But because of the lateness of the hour, Stanley was unable to resolve the date discrepancy at the time of the stop and let Hille go.

Stanley returned to duty that afternoon. The Secretary of State's office had gotten back to her, and she learned that the sticker on Hille's car was stolen. Possession of a stolen sticker is a class 4 felony in Illinois. Stanley proceeded immediately to Hille's registered address in Machesney Park to arrest her for the offense, arranging for fellow Sheriff's Deputy Thomas Morrison to meet her at the house to assist.

When the deputies arrived at the house and knocked on the door, it was answered not by Hille but by the plaintiff, James White. White was Hille's boyfriend at the time, and he owned and lived in the house. The deputies told White that they wanted to come inside to speak with Hille, but White refused to allow them entry without a warrant.

Deputies Stanley and Morrison claim to have smelled burning marijuana coming from inside the house while they spoke with White at the front door. Indeed, Hille had been smoking marijuana just before the officers arrived. She was eventually found in the house with a half-burned joint. At some point during their discussion, White attempted to close the door on the deputies and then retreated into the split-level house and up the stairs. But Stanley blocked the door from closing, and the deputies came into the house just behind White and tackled him on the stairs. Morrison forced White's arm behind his back and told White to stop resisting. White denies resisting and says that he told Morrison that Morrison was hurting his arm. White claims to have suffered a shoulder injury during the incident.

The deputies arrested White for resisting or obstructing a peace officer.[1] The charge was later dismissed. White then brought this § 1983 suit against Stanley and Morrison for false arrest and excessive force.[2]

After discovery, the deputies moved for summary judgment on the false arrest claim. They claimed that the smell of burning marijuana provided an exigency justifying entry into the house in order to prevent the destruction of evidence. Barring that, the deputies argued that it was not clearly established that the smell of marijuana alone could not give

[1] The deputies also arrested Hille, both for possession of marijuana and for improper display of a registration sticker.

[2] The excessive force claim remains pending in the district court and is not part of this appeal. White also brought a claim pursuant to Article I, § 6 of the Illinois Constitution. The district court granted summary judgment against White on this claim and he does not appeal.

rise to an exigency, which would entitle them to qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

The district court denied the motion. The court found that there was no exigency, and that the deputies had waived the defense of qualified immunity. The deputies had included the defense in both their answer and their memorandum in support of summary judgment, and White had argued against it in his response memo. Yet the district court found the qualified immunity argument undeveloped and therefore waived because, in the court's view, the deputies did nothing more than recite the boilerplate requirements for the defense. The court added that even if the argument had not been waived, the deputies would not have been entitled to qualified immunity because they violated a clearly established right. The deputies took an interlocutory appeal.

## II. Discussion

Our review of the district court's finding of waiver and its denial of qualified immunity is de novo. *See, e.g., e360 Insight v. Spamhaus Project*, 500 F.3d 594, 599 (7th Cir. 2010); *Levan v. George*, 604 F.3d 366, 369 (7th Cir. 2010).

The district court was incorrect to conclude that the deputies had waived their qualified immunity defense. Indeed, White concedes this in his brief on appeal, agreeing that the deputies raised the issue, and noting that their arguments were sufficient to induce a response from White in the district court. We enforce waiver in part to prevent prejudice to the opposing party, and it is obvious that White would suffer no prejudice by allowing the defense here. *See Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 913–14 (7th Cir. 2011). He was on notice from the time of the deputies' an-

swer that they planned to assert qualified immunity. And when it was raised in the deputies' summary judgment memorandum, White responded in his brief. Waiver was therefore inappropriate.

On the merits of the deputies' claims of qualified immunity, their susceptibility to suit hinges on the propriety of their home entry. If the deputies had no right to enter the house, then White's slamming the door on them would obviously not support an arrest for obstruction of a peace officer. If, however, the deputies did have a right to enter the home, then White's door slamming at least arguably supplied them with probable cause to arrest.

Typically, the Fourth Amendment requires police to have probable cause and a warrant to enter a home. *Payton v. New York*, 445 U.S. 573, 586 (1980). The deputies had no warrant, but they argue that the smell of burning marijuana outside the house presented an exigency—an exception to the warrant requirement. Police have authority to enter a home without a warrant to render emergency assistance, pursue a fleeing felon, or prevent the destruction of evidence. *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011).

As in all cases concerning qualified immunity, we must determine whether there was (1) a violation of (2) a clearly established constitutional right. *Pearson*, 555 U.S. at 232. The district court initially asked the right question—whether the smell of burning marijuana outside a home provided an exigency—and answered it in the negative. We agree with the district court's conclusion that the smell of burning marijuana, without more, did not provide an exigency permitting these officers to make a warrantless entry. But we disagree with the court's answer to second question: contrary to what

it found, it was not clearly established at the time of the incident that burning marijuana did not justify warrantless entry.

We are guided to our conclusion on the first prong by the Supreme Court's decisions in *Johnson v. United States*, 333 U.S. 10 (1948), and *Welsh v. Wisconsin*, 466 U.S. 740 (1984). In *Johnson*, federal narcotics officers approached a hotel room on a tip and smelled odors of burning opium outside. 333 U.S. at 12. Though the officers had no warrant, one of the officers demanded that the suspect open her door so that they could search her room, which she did. The Supreme Court concluded that the officers should have obtained a warrant, because the mere smell of burning opium outside a hotel room was insufficient to excuse the requirement, despite the fact that the opium odors would dissipate. *Id.* at 15. The Court's holding the police to the warrant requirement in *Johnson* suggests that the smell of burning marijuana is no exigency here, either.

*Welsh* is instructive for different reasons. A suspect was arrested for drunk driving after the police found his abandoned car near his home and entered his home without a warrant to administer a test for blood alcohol level. 466 U.S. at 742–43. At the time, Wisconsin deemed it a minor offense to drive under the influence. The state claimed it had a right to enter the home without a warrant to prevent the destruction of evidence—i.e., the dissipation of the suspect's blood alcohol level. But the Supreme Court rebuffed this argument and counseled that suspicion of minor offenses should give rise to exigencies only in the rarest of circumstances, because the state's interest in gathering evidence of a minor offense is

generally not strong enough to overcome the weighty interest in home sanctity. *Id.* at 753.

The possession of a small amount of marijuana is far from that rare case. In all of the states in this circuit, mere possession is only a misdemeanor. *See* 720 ILCS 550/4; Wis. Stat. § 961.41(3g)(b); Ind. Code § 35-48-4-11. In fact, in Illinois, possession will soon no longer be per se illegal under state law, as Illinois has begun implementing regulations to permit the use of medical marijuana for qualifying individuals. *See Medical Cannabis Pilot Program*, ILLINOIS.GOV, http://www2.illinois.gov/gov/mcpp/Pages/default.aspx (visited March 5, 2014). Thus, once this regulatory scheme is in place, the smell of burning marijuana will not necessarily be indicative of any wrongdoing under Illinois law.

The upshot of all this is that police who simply smell burning marijuana generally face no exigency and must get a warrant to enter the home. But the lack of an exigency does not end the inquiry in this case, for the deputies still prevail if the right they violated was not clearly established at the time of the violation.

On this second prong the district court stated: "it is established beyond need for citation that a private citizen may refuse police entrance into his home without a warrant or other justifying circumstances and arresting an individual for whom the officers lacked probable cause is unconstitutional." True. However, that is not the critical inquiry. The district court's approach would undermine the effectiveness of the qualified immunity defense for officers anytime they enter a home on a questionable exigency. If the court found that in fact no exigency existed, liability for an illegal search, illegal entry, or illegal arrest would always follow.

In *Anderson v. Creighton*, 483 U.S. 635 (1987), the Supreme Court cautioned against defining the relevant constitutional right in the qualified immunity analysis too generally, because doing so would "convert the rule of qualified immunity … into a rule of virtually unqualified liability simply by alleging a violation of extremely abstract rights." *Id.* at 639. After all, it is obvious—as the district court said—that searching or arresting anybody after an unjustified home entry violates clearly established constitutional rights. But this glosses over the tough question facing the officer: "Do I have justification to enter in the first place?" Qualified immunity is supposed to protect officers in the close case, and it therefore must apply to the officer's snap judgment in a legally hazy area. *Cf. Stanton v. Sims*, 134 S. Ct. 3, 7 (2013) (*per curiam*) (finding an officer entitled to qualified immunity for chasing fleeing misdemeanant onto the curtilage of a home because of a split in case law on the propriety of doing so).

The necessary inquiry in this case is whether it was clearly established on March 9, 2010 that the smell of burning marijuana, standing alone, was no exigency. During the court's discussion of whether or not the smell of burning marijuana established an exigency, it noted that "courts who have addressed [the issue] have answered that question in varied and conflicting ways, and there does not appear to be a universal, or even majority, approach to this question." The district court was right—federal and state courts have been all over the map on this issue. *Compare United States v. McMillion*, 472 F. App'x 138, 141 (3d Cir. 2012) (smell of burning marijuana provided an exigency); *United States v. Grissett*, 925 F.2d 776, 778 (4th Cir. 1991) (same); *State v. Rodriguez*, 945 A.2d 676, 678–79 (N.H. 2008) (same); *Rideout v. State*, 122 P.3d 201, 208 (Wy. 2005) (same); *Mendez v. People*,

986 P.2d 275, 282 (Colo. 1999) (same); *State v. Hughes*, 607 N.W.2d 621, 628 (Wis. 2000) (same); *State v. Decker*, 580 P.2d 333, 336 (Ariz. 1978) (same), *with Howe v. State*, 916 P.2d 153, 160 (Nev. 1996) (smell of burning marijuana did not give rise to an exigency); *State v. Ackerman*, 499 N.W.2d 882, 886–87 (N.D. 1993) (same); *State v. Dorson*, 615 P.2d 740, 746 (Haw. 1980) (same); *State v. Schur*, 538 P.2d 689, 694 (Kan. 1975) (same). Adding to the confusion, many of the courts that have dealt with this issue have been willing to consider the smell of burning marijuana only as part of a totality of the circumstances inquiry in deciding whether an exigency exists. *See, e.g.*, *State v. Walker*, 62 A.3d 897, 906 (N.J. 2013).

In light of this fractured case law, we cannot say that "at the time of the challenged conduct, the contours of [White's] right [were] sufficiently clear" such that "every reasonable official would have understood" that entering the home after smelling the burning marijuana violated the right. *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (internal alterations and quotation marks omitted). It follows that the deputies are entitled to qualified immunity.

Future police officers faced with a situation like the one confronting Stanley and Morrison should not feel emboldened to act as the deputies did here. Henceforth, officers who make a warrantless entry under the circumstances found in this case should expect no shelter from liability.

REVERSED.